DAVID M. JONES, Appellant, *v.* JAMES BENEDICT et al.,
Respondents.

Where money is collected by a creditor by the sale of collaterals placed in his hands to secure several distinct items of indebtedness, under such circumstances that neither he nor the debtor possesses the right to determine as to the application, the power devolves upon the court, and it will apply the money upon equitable principles.

W. H. held certain notes and a mortgage as security for an indebtedness of W. F.; the latter was dealing with and was indebted also to F., B. & Co. To secure any balance which might, at any time, be due from W. F. to that firm, W. H. transferred to them said securities, the same to be returned to him when such balance was paid; afterward W. H. drew drafts upon F., B. & Co. for the benefit of a mining corporation, in which he had no interest, but in which W. F. and the plaintiff were stockholders, W. F. being its superintendent; these drafts were accepted by said firm upon an agreement that the notes and mortgages should be held as security therefor; and, not having been paid at maturity, were taken up by the firm. To procure an extension of the time of payment W. F. executed his notes, payable to his order, which were indorsed by him, by plaintiff and by other stockholders, and were delivered to F., B. & Co. The stockholders, including plaintiff and W. F., subsequently executed an agreement by which each obligated himself to pay his proportionate share of liabilities assumed for the benefit of the corporation. F., B. & Co. recovered judgment upon the stockholders' notes, and subsequently collected, upon the mortgage, a sum sufficient nearly to pay the balance due them from W. F. In an action brought for relief against said judgment, plaintiff claiming that the sum so collected should be applied *pro rata* upon the debts for which the mortgage was held as security, *held*, that whether the application of the money devolved upon the creditor or the court, equity justified its application upon the balance due from W. F.

*Blackstone Bank* v. *Hill* (10 Pick. 129), *Cowperthwaite* v. *Sheffield* (1 Sandf. 416; affirmed, 3 N. Y. 243), and *Bridenbecker* v. *Lowell* (32 Barb. 9), distinguished.

(Argued November 11, 1880; decided December 1, 1880.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made February 17, 1879, affirming a judgment in favor of defendants, entered upon the report of a referee. (Mem. of decision below, 17 Hun, 128.)

The nature of the action and the material facts are set forth in the opinion.

*Leslie W. Russell* for appellant.    The power to · apply the money realized from the collaterals devolved upon the court.    (*Bridenbecker* v. *Lowell*, 32 Barb. 9 ; *Blackstone Bk.* v. *Hill*, 10 Pick. 129 ; *Cowperthwaite* v. *Sheffield*, 1 Sandf. 416 ; affirmed, 3 Comst. 243.)    The indorsers, or those jointly liable with Witherell, have an equal right to claim the proper legal application of the payments.    (*Bridenbecker* v. *Lowell*, *supra; Corey* v. *Leonard*, 56 N. Y. 494.)    The money is applicable, *pro rata*, upon the two indebtednesses.    (*Bridenbecker* v. *Lowell*, *ubi supra; Blackstone Bank* v. *Hill*, 10 Pick. 129; *Corey* v. *Leonard*, *ubi supra; Cowperthwaite* v. *Sheffield*, *ubi supra; Favene* v. *Bennett*, 11 East, 36; Civil Code of Louisiana, art. 2, 162; 3 Comst. 243.)    Plaintiff is entitled to compel a ratable application of the $16,000 received from the security to the two debts proportionately.    (*Lawrence* v. *Cornell*, 4 Johns. Ch. 545; *Croft* v. *Mott*, 4 N. Y. 604; *Coburn* v. *Wheelock*, 34 id. 440; *Marryats* v. *White*, 2 Starkie, 101; approved in Chitty on Contracts, 755, 756; Story's Eq. Jur. 459 [see note 3]; id. 459, notes *d* and *e; Wright* v. *Austin*, 56 Barb. 13.)

*Matthew Hale* for respondents.    We are not to look at the mere form of the instrument, but to the true nature of the transaction, to determine the rights of the parties.    (*M. & H. R. Co.* v. *Costigan*, 2 Sandf. Ch. 338; *Neimcewicz* v. *Gahn*, 3 Paige, 614, 643; *S. C.*, in error, 11 Wend. 312.)    The amount realized by respondents on the foreclosure of the Louisiana mortgage was not applicable upon their judgment against the plaintiff and others.    (*Pattison* v. *Hull*, 9 Cow. 773, 777; *Bridenbecker* v. *Lowell*, 32 Barb. 9, 24; Story's Eq. Jur., § 459 *g; U. S.* v. *Kirkpatrick*, 9 Wheat. 720, 737, 738; *U. S.* v. *Wardwell*, 5 Mason, 82, 87; *Postmaster-General* v. *Furber*, 4 id. 333, 336.)    No question of marshaling of assets can arise here. · (Story's Eq. Jur. 29, §§ 642, 643; *Ex parte Ken-*

*dall*, 17 Ves. 520; *Dorr* v. *Shaw*, 4 Johns. Ch. 17, 20; *Ayers* v. *Husted*, 15 Conn. 504, 517.)

EARL, J. This action was commenced for relief against ·a judgment recovered by the defendants, James Benedict, Frederick Fawcett and Thomas Fawcett, against the plaintiff and others, on the ground that the same has been paid, or ought to be paid, out of funds in the hands of these defendants·

The material facts, as found by the referee, are as follows: Prior to 1867, William H. H. Witherell had, for several years, been a merchant in New Orleans, and had had dealings with the defendants named, who did business in the city of New York under the firm name of Fawcett, Benedict & Co. In 1867 he sold out his business to his nephew, W. F. Witherell, who, thereafter, carried on the business and had extensive dealings with Fawcett, Benedict & Co. From time to time he drew drafts on them in his business, sometimes in excess of the funds or property in their hands, which were cashed by them. In December, 1869, at New Orleans, he made his four promissory notes payable to his own order, each for $6,000, and delivered them to Pierre Jorda, and to secure the payment of the notes to any future holders thereof, he, at the same time, according to the law and practice of the State of Louisiana, executed to Jorda a mortgage upon certain land in that State. After that, being indebted to W. H. H. Witherell, he delivered to him the four notes and the mortgage to secure to him payment of such indebtedness, and in February, 1872, W. H. H. Witherell held the notes and mortgage as such security, and the indebtedness, the amount of which does not appear, has not been paid. At the same time in February, 1872, W. F. Witherell was also indebted to Fawcett, Benedict & Co., and during that month the notes and mortgage were by W. H. H. Witherell, with the consent of W. F. Witherell, delivered to Fawcett, Benedict & Co., to secure the payment to them of any balance which might, at any time, be owing them by W. F. Witherell, and to be returned to W. H. H. Witherell when such balance should be paid. Subsequently W. F. Witherell

continued to deal with Fawcett, Benedict & Co. and to draw drafts upon them in his business, and in October, 1872, he owed them a balance of over $15,000, for which they held the four notes and mortgage as security. Prior to that time, he, with the plaintiff and others, had become interested in a mining company organized in St. Lawrence county to carry on mining operations in Colorado, and he was the superintendent of the company and had the management and charge of its business. In the latter part of October, 1872, he applied to Fawcett, Benedict & Co. for the loan of their credit for the use and benefit of the mining company, by accepting drafts to be drawn upon them for $20,000, payable at future dates. Thereupon, at the special instance of W. H. H. Witherell, acting for W. F. Witherell and in the interest of the mining company, they agreed to accept drafts upon receiving an instrument as follows:

"NEW YORK, 29*th October*, 1872.

Messrs. FAWCETT, BENEDICT & Co.:

*Present.* — We are each of us indebted to you in certain sums of money, the amounts being not yet fully ascertained, as sales of merchandise in your hands are not completed, and we desire you to accept our drafts for $11,000, at not less than thirty days sight; and within the next twenty days for $9,000 at sixty days sight. Said sums of $11,000 and $9,000 we agree to remit to you in time to meet your acceptances when they become due, by drafts on New York. You are to be paid the usual commission for accepting. We leave in your hands, as security for our indebtedness to you now, and for the reimbursement of such sums as we may draw for as above, two notes for $6,000 each, dated 20th December, 1869, at one year from date, and two notes for $6,000 each, dated 20th December, 1869, at two years from date, which said notes are made by W. Frank Witherell — one of the undersigned — and are secured by a mortgage on our land in East Baton Rouge, La., made 20th December, 1869. The drafts which we propose, as above, to draw on you will be made by W. H. H.

Witherell — one of the undersigned — and we hereby bind ourselves jointly and severally to pay you all such indebtedness now standing or to stand against us, or either of us, in full, with interest and proper charges.

W. FRANK WITHERELL,

W. H. H. WITHERELL."

Afterward, during November, 1872, as provided in that instrument, drafts were drawn on the firm by W. H. H. Witherell, in New Orleans, in all for $20,000, which were accepted by them, and such drafts were by him sold in New Orleans, and the proceeds thereof were by W. F. Witherell, or under his direction, applied to and for the use of the mining company. These drafts not having been paid at maturity by Witherell or the mining company, were taken up by Fawcett, Benedict & Co., and thereafter held by them.

In January, 1873, W. F. Witherell came from Colorado to St. Lawrence county, and he there met the plaintiff, who was president of the mining company, and other directors, and he reported to them that he had incurred large liabilities for the company, that he needed help from them, and proposed that two notes should be made, one for $10,000, payable sixty days after date, and another for $10,500, payable ninety days after date, and he said that the notes could be carried along until paid with proceeds of the mine of the company. Whereupon he made the two notes payable to his own order, and he and the plaintiff, and the defendants, Vary, Samburn, Brown, Haley, Wheelock and Thomas D. Witherell, all stockholders, and all but Haley and Witherell directors of the corporation, indorsed the notes. The notes were put into the hands of W. F. Witherell, and he delivered them to Fawcett, Benedict & Co., on account of the drafts held by them, not as payment thereof or security therefor, but to extend the time of their payment. Afterward an agreement in writing was executed by the plaintiff, and the defendants, Vary, Samburn, Brown, Haley, Wheelock, and thirty-three others, including W. F. Witherell, as follows: "Whereas, the undersigned are stock-

holders in the St. Lawrence Silver Mining Co. of Colorado, a corporation duly incorporated by and under the laws of the State of New York; and whereas the officers of said company, for the purpose of developing its property, have incurred personal obligations, and are called on to incur still further liability for like purpose : Now for the purpose of equalizing the matter and for the protection of said officers, for value received, we severally hereby agree to and with the officers of said company to pay and indemnify them and each of them for any sum which they may have to pay on account of the liability assumed or to be assumed by them for the purposes above expressed, in the same proportion or rate which the stock severally held or owned by us bears to the whole stock issued by said company."

The two notes thus made and delivered to Fawcett, Benedict & Co. not having been paid, in May, 1873, they commenced an action in the Supreme Court of this State against the maker and all the indorsers thereof to enforce payment thereof, and they recovered a judgment for the whole amount, principal and interest, in June thereafter. Afterward, in December, 1873, the defendants in the judgment paid thereon upwards of $10,000, leaving unpaid thereon nearly $11,000.

The four notes, each for $6,000, which were held by Fawcett, Benedict & Co. with the mortgages as security, not having been paid, in June, 1874, they foreclosed their mortgage by legal proceedings instituted in the State of Louisiana, and sold the mortgaged premises, and realized from them above expenses about $16,000, which was a few dollars less than the balance due them from W. F. Witherell on their account against him which existed, as above stated, October 28, 1872, and it was applied by them upon such balance.

Fawcett, Benedict & Co. were proceeding to enforce the payment of the balance of their judgment against the plaintiff and the other defendants in the judgment, when the plaintiff commenced this action to restrain the collection thereof. His claim is that the mortgage was held for the security of the drafts paid by Fawcett, Benedict & Co., as well as for the

balance of indebtedness due them — two debts — and hence that the money realized from the mortgage should be applied *pro rata* upon both debts; and whether this claim is well founded, is the important question now to be determined, and its determination depends upon the law as to the appropriation or imputation of payments.

The money in question was realized by Fawcett, Benedict & Co. by a sale of the pledge placed in their hands by the mortgage, just the same as if the pledge had been government bonds or other chattels.     It was not realized in a suit brought directly to enforce their debts against W. F. Witherell.     Having obtained the money by a sale of the pledge, the question is, how are they bound to apply it ?     The debt owed by W. F. Witherell for the balance of account was his individual debt, for which he was liable, as between him and all other persons, as principal.     The debt growing out of the drafts was one created by him for the benefit of the mining company.  As between him and that company, he was not the principal debtor.     As to the two notes which were made by W. F. Witherell and indorsed by the plaintiff and others — one for $10,000 and the other for $10,500 — they were made for the benefit of that company.     Upon them Witherell was no more principal debtor than the plaintiff and other indorsers.     They were all sureties for the company, and the plaintiff and others, who executed the paper secondly above set out, were bound to indemnify Witherell against his liability, both upon the draft indebtedness and the notes, in proportion to the stock owned by them respectively in the company.

Such being the conditions, if W. F. Witherell had voluntarily paid this money to Fawcett, Benedict & Co., to apply generally upon his liabilities to them, without any specific directions, they would have had the right to apply it upon the balance of account due them, and such application, if it needed any justification, would have been justified upon two grounds : The balance of account was the oldest indebtedness, and it was one for which he was liable as principal, while the other was one for which he was liable only as surety.     So much, as I un-

derstand it, is conceded by the learned counsel for plaintiff; that is, he does not dispute that if this money had been voluntarily paid to Fawcett, Benedict & Co. by W. F. Witherell, they could have applied it as they did; and so are the authorities. (*Field* v. *Holland*, 6 Cranch, 8, and note to same case in 1 Am. Lead. Cas. by Hare and Wallace, 286; *Pattison* v. *Hull*, 9 Cow. 747, and note; *Stone* v. *Seymour*, 15 Wend. 19.) And there is another principle which would in such case have authorized the same application. The balance of account was the least secured. For the other debt, the creditors held the indorsements of the plaintiff and others; and in such case, the best American authorities hold that the creditor has the right, in the absence of countervailing equities, to apply the payment upon the debt least secured, as that would be most beneficial to him. But the plaintiff claims that because this money was realized in a legal proceeding against Witherell, the firm had no right to apply it to one debt, but that the application must be made by the law *pro rata* to both debts; and I will briefly notice the authorities to which his counsel calls our attention to sustain his claim.

In *Blackstone Bank* v. *Hill* (10 Pick. 129), it was held that the principle of law by which a creditor, having several demands against his debtor, may elect to appropriate a payment to any one of them, if the debtor makes no election, is applicable only to voluntary payments; and that where a creditor recovered one judgment on several notes, some of which were made by the judgment debtor alone, and others were signed also by a surety, and took out an execution which was satisfied in part by a levy, he could not appropriate this payment solely to the notes not signed by the surety, but that all the notes were paid proportionally. The reason given for the rule as thus laid down was that as the debtor, in such case of involuntary payments, has not the power to make any election, the creditor should not have. And to the same effect are the cases of *Cowperthwaite* v. *Sheffield* (1 Sandf. 416; affirmed 3 N. Y. 243), and *Bridenbecker* v. *Lowell* (32 Barb. 9). According to these authorities, where several debts are put in suit, and money is

collected or realized upon the judgment in such suit, it must be applied *pro rata* upon all the debts. In such case, the money is received upon all the debts, as much upon one as upon another, and hence must be applied upon all. The debts are merged in the judgment, and the money is received to apply *in solido* upon the judgment, and it may well be that there can be no application upon a part of the judgment. But this is not such a case. As above stated, here the money was realized by the sale of a collateral security, and the question is as to its application after it came into the hands of the creditors. It may be said that W. F. Witherell had no right of election, and hence that he cannot be presumed to have conferred such right upon the creditors. If that be so, it is a case where the law must make the application according to equitable principles. If neither party exercises or possesses the power to apply the money, then the power devolves upon the court, and it will apply the money upon equitable principles. (Munger on the Application of Payments, 81, 210.)

Now what are the equities which are here to be taken into account? This mortgage was first delivered to W. H. H. Witherell to secure him for an indebtedness due him from W. F. Witherell, and such indebtedness has not yet been paid. He made the drafts for the benefit of the mining company, although not a stockholder thereof and having no interest therein. He then delivered the mortgage to Fawcett, Benedict & Co., to secure them for such drafts and the balance of account due them from W. F. Witherell. Subsequently the creditors received the two notes in effect as security for the draft indebtedness. These notes were made by parties interested in the mining company, for the purpose of promoting its interests and their own through it. As between them and W. H. H. Witherell, they, rather than he, ought equitably to pay the draft indebtedness; and the creditors, having the power to collect that indebtedness out of them, should be permitted to do so, rather than be forced to collect it, or any part of it, out of him. His equities, although he is not a party to this action, cannot be ignored; and he may be treated in some sense as a surety for

the plaintiff and the other indorsers of the two notes. It is, therefore, in this view, equitable that the money should be applied upon the balance of account, leaving the creditors to collect the draft indebtedness of those who, as between themselves and W. H. H. Witherell, ought justly to pay it.

But there is still another and more .obvious ground for the application of the money which has been made. The mortgage was first delivered to the creditors to secure the balance of account, and it was simply left in their hands as security also for the drafts. Under such circumstances, the money realized by virtue of the mortgage should be first applied to pay the balance of account. The rule is thus stated in the learned note to *Pattison* v. *Hull* (*supra*): "If the debts were contracted at divers times upon the security of the same pawns and mortgages, so as that the debtor had mortgaged for the last debts what should remain of the pledge, after payment of the first, the moneys arising from the pledges would, in this case, be applied in the first place to the discharge of the debt of the oldest standing." When Fawcett, Benedict & Co. agreed to accept the drafts, they did not give up the securities which they held; and all the Witherells could then pledge was the interest they then had in the securities which they left with the creditors, and that was the balance remaining. after satisfying the amount for which they had previously been pledged.

It seems to us, therefore, plain, whether the money in question be regarded as a voluntary or involuntary payment by W. F. Witherell, and whether the application of it be devolved upon the creditors or upon the court, that equitable principles justify its application upon the balance of account.

The further claim is made by the plaintiff that there is an additional sum which the creditors ought to have realized by virtue of the mortgage, and which, if realized, would be applicable to reduce the judgment against him. It is sufficient to say of this, that there is no finding or proof which justifies the claim.

The judgment should be affirmed.

All concur.

Judgment affirmed.