Webster and others *v.* Mitchell and others.

(*Circuit Court, D. Indiana.* September 10, 1884.)

COLLATERAL SECURITY—AGENT INDORSING NOTES FOR PRINCIPAL—INSOLVENCY
—TRANSFER OF SECURITY—RIGHTS OF HOLDERS OF NOTES.

C. & Co. made M. their agent to sell lumber by contract, stipulating, among other things, that C. & Co. placed their stock of lumber in M.'s hands, at rates and on commissions stated, and "that all stock, and accounts or notes outstanding or thereafter made, and all future shipments, shall be and are collateral security to M. for any and all notes or acceptances heretofore given by him to C. & Co., or any notes or acceptances hereafter given by him to them." M., under this arrangement, made his note to C. & Co. for $1,000, which they indorsed to W., and on the same day a note for $500 was made and indorsed to P.; M., though in form the maker, being in fact the surety for C. & Co., for whose accommodation the notes were made. On the same day, C. & Co., with M. as surety, made their notes to S. for $2,000, payable in equal installments, in 60, 75, 90, and 120 days after date. Subsequently, M., as agent of C. & Co., by writing, reciting the indebtedness to S., transferred to him certain of the lumber, etc.; said S. to sell said lumber, etc., and to apply the proceeds to the payment of the notes. At the time of the transfer, C. & Co. and M. were insolvent, as S. knew. S. realized $2,000 from the sale of the property. *Held*, that the property in the hands of M. was impressed with a trust in favor of the holders of the notes, and could not, after the insolvency of C. & Co. and M., be transferred to one of the *cestuis que trust* to the prejudice of the others, and that S. should account to W. and P. for a proportionate amount of the sum realized from the goods so transferred.

In Equity.

*P. A. Randall,* for plaintiffs.

*Coombs, Morris & Bell,* for defendants.

WOODS, J. The facts in this case are these:

Some time before October 31, 1876, Crossette, Graves & Co., of Grand Rapids, Michigan, made Daniel Mitchell, of Marion, Indiana, their agent to sell lumber at Marion, and on that date made with him a contract, whereby the agency was extended until June 1, 1877; and it was stipulated, among other things, that Crossette, Graves & Co. placed their stock of lumber, lath, and shingles in Mitchell's hands for sale at rates and upon commissions stated, and "that all stock and accounts, or notes outstanding, or thereafter made, and all future shipments, shall be and are collateral security to the said Daniel Mitchell for any and all notes or acceptances heretofore given by him to said Crossette, Graves & Co., or any notes or acceptances hereafter given by him to them." On January 11, 1877, Mitchell, under this arrangement, made his note to Crossette, Graves & Co. for $1,000, which they indorsed to the complainant Webster, and on the same day a like note for $500 was made and indorsed to the complainant Price; Mitchell, though in form the maker, being in fact surety for Crossette, Graves & Co., for whose accommodation each of the notes was made. On the same day, January 11, 1877, Crossette, Graves & Co., with Mitchell as surety, made their notes to the defendants Sweetzer, for $2,000, payable in equal installments, maturing in 60, 75, 90, and 120 days, respectively, after date. On January 27, 1877, Mitchell, as agent for Crossette, Graves & Co., by a writing signed and acknowledged, wherein reference is made to the contract of agency aforesaid, and to the indebtedness to the Sweetzers, evidenced by said notes, did "sell, transfer, and deliver to Sweetzers certain lumber, lath, and shingles, more particularly described in an itemized statement thereto attached and made part thereof,

marked 'B,' said Sweetzers to sell said lumber, etc., and to apply the proceeds to the payment of said notes." At the time of this transfer, Crossette, Graves & Co. and Mitchell were insolvent, and this fact was known to Sweetzers. Out of the goods transferred to them, Sweetzers realized about $2,000.

Upon these facts the complainants insist that the goods in the hands of Mitchell, held by him as collateral security for his obligations made for or to Crossette, Graves & Co. for their accommodation, were impressed with a trust in favor of the respective holders of those obligations, and could not, after the insolvency of Mitchell and of Crossette, Graves & Co. be transferred to one of the *cestuis que trust* to the prejudice of the others. This is claimed on the broad principle of equity, "That a mortgage made (or security given) by a debtor to his surety, to secure the payment of certain debts for which the latter is liable, and to indemnify him therefrom, is not to be regarded simply as an indemnity to him, but the estate of the mortgagor (or the security) is to be treated as a security for the debt, of which the creditor may avail himself; or, if there be several debts, of which the several creditors may avail themselves, in proportion to the amounts of their respective claims." *Eastman* v. *Foster*, 8 Metc. 19; *Rice* v. *Dewy*, 13 Gray, 47; *Wilcox* v. *Fairhaven Bank*, 7 Allen, 270; *Krahmer* v. *Rahm's Appeal*, 37 Pa. St. 71; *Moses* v. *Murgatroyd*, 1 Johns. Ch. 119; Perry, Trusts, 217, 218, 828, 843; Brandt, Sur. §§ 282, 284; Baylie, Sur. 373; *Heath* v. *Hand*, 1 Paige, 329; *Bank of U. S.* v. *Stewart*, 4 Dana, (Ky.) 27; *Van Orden* v. *Durham*, 35 Cal. 136; *Vail* v. *Foster*, 4 N. Y. 312; *Curtis* v. *Tyler*, 9 Paige, 432; *Bank of Auburn* v. *Throop*, 18 Johns. 505; *Rice's Appeal*, 79 Pa. St. 168; *Price* v. *Trusdell*, 28 N. J. Eq. 200; *Crosby* v. *Crafts*, 5 Hun, 327.

On the other hand the respondents insist that the doctrine stated is not applicable: *First*, because inconsistent with the contract, which gave Mitchell unrestricted power to sell the property placed in his hands either at retail or by wholesale; and, *second*, because, in respect to the paper held by the complainants, Mitchell was not surety, but the maker, and Crossette, Graves & Co. indorsers, whom the plaintiffs, by negligence and failure to give notice of the dishonor of the paper, had released from liability. Upon this point counsel for the respondents have said:

"Upon none of the instruments sued on has Mitchell contracted as the surety of Crossette, Graves & Co., nor is he, as to any of the complainants, entitled to the rights and privileges of a surety. As the acceptor of the drafts sued on, he is a principal debtor; he contracts as such and not as surety. The remedy against him is upon the acceptance; it is at law. As acceptor he has no principal. The holder of the drafts is under no obligation to Mitchell as surety. Brandt, Sur. § 28 *et. seq.*; 2 Daniels, Neg. Inst. § 1334; *Trimble* v. *Thorn*, 16 Johns. 152; *Fentum* v. *Pocock*, 5 Taunt. 192. This last case, decided by Lord MANSFIELD, settled the law in England upon the subject. See, also, *Nichols* v. *Norris*, 3 Barn. & Adol. 41. As to the American rule, see 2 Daniels, § 1335. * * * Says Daniels, speaking of the authorities on the subject: 'And even when the holder knew that the apparent principal was really signing for the accommodation of another at the time when he received

the instrument, the better opinion is that that circumstance does not alter his rights or duties; as such a party has held himself out and obligated himself in a certain character, and has no just ground to demand or expect greater consideration than that legally incident to that character which he had assumed.' Section 1334."

. The rule at law, and as between the immediate parties, is doubtless as thus stated by counsel and by the authorities cited; nevertheless, in equity the real relations of the parties to a paper may ordinarily be shown; and even in an action at law it is competent to show, as an excuse for not giving notice of dishonor to an indorser, that the paper was made for his accommodation. Edw. Bills, 453, 454, 638; 1 Pars. Bills, 557, 558; 2 Daniels, Neg. Inst. §§ 995*b*, 1085. The notes in question were all made by Mitchell for the accommodation of Crossette, Graves & Co., who, therefore, were not entitled to notice of protest or non-payment, and, for any reason disclosed in the record, are yet bound by paper; and there is no party to the controversy who can insist that the court should not look beyond the form of the paper into the real relations of the parties. This done, it is clear that, in respect to all these notes and drafts, Mitchell was, in fact, surety for Crossette, Graves & Co.

In respect to the alleged inconsistency between the unrestricted power of Mitchell, under the contract of agency, to dispose of the goods and the supposed trust, it may be conceded that the power was as broad as claimed, and that so long as the business was going on, Mitchell, while acting in good faith, had not only the right to sell, but to dispose of the proceeds as he chose; resulting, perhaps, in "the curious fact," as counsel call it, that, while conducting the business, Mitchell had power to increase the number of the beneficiaries of the trust and the amounts of the claims against the trust fund, and at the same time to diminish or even destroy the fund itself. But whether these things were so or not, need not be decided. If so, I am still not ready to concede that the trustee, in such a trust, might lawfully have disposed of the entire property for less than a fair price, or for a full price, without making provision for payment of the obligations which he had incurred under the agreement. A sale to a good faith purchaser in such case would, of course, be unassailable, but the proceeds, by the doctrine already stated, and in strict accord with the terms of the contract in question, would come under the trust,—a trust which the law raises, though the parties may not have intended it. This, it seems to me, would be so, even if the solvency of the debtor and surety remained unquestioned. But however this may be, when, as in this instance, such insolvency is shown, and the business of the agency must cease,—has ceased,—it cannot be permissible that the agent who has incurred liabilities for his principal, holding collateral securities against such liabilities, may apply the collateral to the payment of one of the obligations to the exclusion of others. In such a case "equality is equity," and there is no room for a preference, such

as is shown to have been attempted. The defendants should account to the plaintiffs for a proportionate amount of the sum realized from the goods so transferred. Decree accordingly.