### ENGLISH v. McINTYRE et al.

(Supreme Court, Appellate Division, First Department. May 13, 1898.)

1. TRUSTS—MISAPPROPRIATION OF ESTATE—REMEDIES OF BENEFICIARY.

Where a trustee has misappropriated the trust estate, the cestui que trust or a substituted trustee is not confined to the legal remedy by an action for damages against those who have illegally taken the trust estate, but may maintain an action in equity for a judgment requiring the property taken to be returned to the possession of the trustee, and compelling the wrongdoers to account for the interest and profits which they have received.

2. SAME—ACCOUNTING.

In such an action the court has power to direct that the particular securities still held by the defendants shall be delivered over by them, and, as incidental thereto, may send the case to a referee, under whose direction it shall be turned over, and to whom the defendants shall be made to account.

3. SAME—RES JUDICATA.

Where, in an action in New York by a trustee, it appears that his capacity is derived from an appointment as substituted trustee by a court of another state, where the trust was created, such appointment constitutes an adjudication that the trust still continued; and, if the court had jurisdiction, such adjudication cannot be questioned in the action brought by him here.

4. SAME—ACTION BY TRUSTEE.

Where, in such an action, it appears that, by the laws of the state where the plaintiff was appointed, his appointment carries with it authority to maintain an action like that in question, it also operates to enable him to maintain the action in this state.

5. SAME—VALIDITY OF TRUST.

A trust of personal property created by a resident of another state, and in that state, cannot be declared void by the courts of New York, unless it is shown to be void under the statutes of the state where it was created.

6. SAME—VIOLATION OF TRUST—LIABILITIES OF THIRD PARTIES.

The use by a trustee of the trust fund for purposes of speculation is a violation of trust; and persons who take the trust securities from him in connection with such a transaction, with full notice that they are impressed with the trust, are bound to account for them.

7. SAME—POWERS OF TRUSTEES.
    The fact that a trustee of property for a particular purpose is authorized
    to dispose of the property itself for that purpose does not authorize him to
    invest it in speculative ventures.

8. SAME—RIGHTS OF BENEFICIARIES.
    The principle that where there has been a misappropriation of trust funds
    in distinct investments, some of which have proved profitable, and some un-
    profitable, the beneficiary may ratify the former, and take the profits, while
    rejecting the latter, and insisting on a return of the funds invested, with
    interest, does not apply where the trustee merely pledges trust securities
    with a broker, though with notice of the trust, as security for speculative
    purchases and sales, and where they are merely held by the latter as collateral;
    for in such case no investment thereof has been made, and the whole transac-
    tion must be ratified or repudiated together.

Appeal from special term, New York county.

Action by Theodore C. English, as trustee, against Thomas A.
McIntyre and others. From interlocutory judgment for plaintiff,
both parties appeal. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY,
McLAUGHLIN, and INGRAHAM, JJ.

Henry Wynans Jessup, for plaintiff.
John M. Bowers, for defendants.

RUMSEY, J.   Benjamin Williamson, late chancellor of the state
of New Jersey, died in that state about the 1st of December, 1892,
having before then made a will and several codicils, which were
admitted to probate in the orphans' court of that state.   Among
other bequests made by Chancellor Williamson in his will was one
contained in the eleventh clause, by which he divided all the res-
idue and remainder of his personal property into three shares, one
of which was given to his son Isaac, in trust for the education,
support, and maintenance of his children, Lelia and Benjamin, and
the survivors of them, the expenditures to be made by the trustee
at his entire and sole discretion as to time, amount, and character.
The clause further contains a provision bequeathing the trust fund
over absolutely upon the happening of certain conditions, which
are not here material to consider.   In the early part of the year
1894, the executors of Benjamin Williamson, acting under this
clause of the will, set apart certain securities of a par value of
something over $50,000, which were made out to Isaac Williamson
as trustee, under the will of Benjamin Williamson, and in that con-
dition were delivered to Isaac Williamson, who took them as trus-
tee under the eleventh clause of his father's will.   In the latter part
of the year 1894, Isaac Williamson saw fit to enter into a series of
stock speculations with the defendants, who were brokers, doing
business in the city of New York, under the name of McIntyre &
Wardwell.   These speculations were entered into by him "as trus-
tee," and, as margins to secure McIntyre & Wardwell for the pur-
chase of stocks and other articles which he directed to be bought
from time to time, he delivered to them all or by far the greater
portion of the securities which he had received as trustee for his
two children.   In the usual course of events, the losses upon the
speculations were so great that the defendants absorbed all the

securities; and between the trustee, on the one hand, and the bro-
kers, on the other, the trust estate of the personal property was
totally destroyed, and the trustee became entirely insolvent. Aft-
er that condition of affairs had become known, the plaintiff, who
was the general guardian of one of the children, a cestui que trust
under the eleventh clause of this will, began proceedings in the
orphans' court of New Jersey to procure the removal of William-
son as trustee under this clause of the will; and such proceedings
were had in that court that Williamson was removed as trustee,
and the plaintiff was appointed in his place, and was vested with
all the powers which, by the will, had been given to Isaac Wil-
liamson. The plaintiff, after his appointment, demanded of the
defendants the securities which they, as brokers, had received from
Isaac Williamson, and, upon that demand being refused, brought
this action to procure a delivery to him of the securities and an
accounting of the dividends and interest received for them, or for
such other relief as he might be entitled to. Upon the trial it was
substantially conceded that these securities were deposited with
the defendants by Williamson to be used as margins to protect spec-
ulations which they made upon his order from time to time. It was
conceded also that these speculations were made by him as trus-
tee, and that the defendants had notice, not only constructive, but
actual, that the securities which were delivered to them as mar-
gins upon these speculations were held by Williamson in his capac-
ity as trustee, and necessarily, also, that the use of them by Wil-
liamson for the purpose for which they were delivered to the de-
fendants was a violation of his trust, and one which he had no
right to make. The defendants did not dispute these facts, nor,
as we understand it, do they seriously dispute the legal conclusions
which result from them; but having been defeated in the action,
and required to account for the securities which they had received
from Williamson, they attack the correctness of the judgment on
various grounds, none of which, however, question seriously their
liability to account to somebody for the securities which they have
received.

The first point made by the defendants is that the plaintiff had
a complete and adequate remedy at law, and. therefore, that this
action could not be maintained upon the equity side of the court,
and should not have been tried at special term. This point was
sufficiently raised in various ways. The defendants pleaded in their
answer that the plaintiff had a complete and adequate remedy at
law; and, when the case was moved for trial at the special term,
they, by their counsel, demanded a trial by jury at the very first
opportunity, so that they are in a situation to rely upon the point
which they have made if there was anything in it. But we are
clear, upon principle and authority, that the point has no validity.
There is no doubt that the action of Williamson in transferring
these securities to the defendants, and the action of the defendants
in receiving them, were a violation of the terms of the trust; and after
the appointment of the plaintiff in Williamson's place, and his de-
mand from the defendants of the securities, he might, if he had

seen fit, have regarded that demand and refusal as a conversion, as it undoubtedly was, and have brought this action against the defendants for damages. But that was not his only remedy. From the very earliest day it has been held that, where a trustee had misappropriated the trust estate, the cestui que trust or a substituted trustee was not confined to the legal remedy by an action for damages against those who had illegally taken the trust estate, but might maintain an action in equity for a judgment requiring the property taken to be returned to the possession of the trustee, and compelling the wrongdoers to account for the interest and profits which they had received. Wetmore v. Porter, 92 N. Y. 76; Newton v. Porter, 69 N. Y. 133; Holmes v. Gilman, 138 N. Y. 369, 34 N. E. 205; Marshall v. De Cordova, 26 App. Div. 615, 50 N. Y. Supp. 294. These are but a few of the large number of cases which might be cited to establish the right of the plaintiff to maintain this action upon the equity side of the court. See, also, Johnson v. Brooks, 93 N. Y. 337, 343. It cannot be said as an undoubted proposition of law that damages would be a full and complete and adequate remedy to the plaintiff by way of restoring this trust estate. So far as the defendants still have in their possession the identical stocks and bonds which they received from Williamson, the plaintiff is undoubtedly entitled to have those particular securities transferred to him, because they are his; and the defendants will not be permitted to exercise any preference which they may have to keep the possession of those stocks, and pay the plaintiff their value. The plaintiff is entitled to the identical securities, the title to which never passed from Williamson to the defendants. So, if the defendants have sold any of those stocks, the plaintiff is entitled to an accounting for any dividends they may have received from them, as well as to their value; and these remedies can only be completely given by an action in equity, in which a reference can be had, and the precise relief to which the plaintiff is entitled given to him.

This conclusion disposes substantially of another point made by the defendants,—that the court had no power to order a reference. The court undoubtedly had power to direct that the particular securities which Williamson turned over to these defendants should be delivered by them to the plaintiff, and, as incidental to the power to give that relief, it might send the case to a referee, under whose direction this property should be turned over, and by whom the defendants should be made to account for the interest or dividends which they had received, and the precise amount necessary to fix the full compensation to the plaintiff for what his trust estate had been robbed of might be ascertained and adjudged.

It is claimed by the defendants that the plaintiff is not the real party in interest. That claim is based upon the assertion that the plaintiff did not show that he had a valid appointment as trustee in the place of Williamson. The facts in that regard are shortly as follows: Benjamin Williamson, the testator, was a citizen and resident of the state of New Jersey. His will was admitted to probate in the orphans' court of that state. After Isaac Williamson's

insolvency had been ascertained, proceedings were taken in that court for his substitution as trustee. Service was made in those proceedings upon Isaac Williamson in the manner prescribed by the laws of New Jersey; and, as a result of those proceedings, a judgment was entered in the orphans' court in Union county, N. J., by which Isaac Williamson was removed, and the plaintiff was appointed trustee in his place, to perform the duties of trustee under the will; and Isaac Williamson was directed to deliver to the plaintiff all the goods, chattels, money, and effects, or other property which he held or was entitled to hold as such trustee. The objection made to this judgment is, in the first place, that, by the will of Benjamin Williamson, it was provided that, if Isaac should be legally incapacitated or incompetent to manage the property or execute the trust, it was given to Lelia and Benjamin, or to the survivor of them. It appears from the will of Benjamin Williamson, which is printed in the record, that two separate trusts were created, in each of which Isaac Williamson was made trustee, and in each of which the cestuis que trustent were his children, or some of them. The first trust was created by the eleventh clause of the will, and has already been referred to (for his children, Lelia and Benjamin). That, as it seems, was a trust purely of personal property, and nothing more. The second trust was created by the twenty-fourth clause of the will, and was a trust only of real estate. By that clause of the will, a third of the real estate is given to Isaac Williamson in trust, only, that the rents, issues, and profits should be expended by him for the support of his family, and particularly for the education, support, and maintenance of his children, Lelia and Benjamin. By a codicil in his will, made on the 8th of August, 1892, Benjamin Williamson struck out from the twenty-fourth clause the words "and particularly the education, support, and maintenance of his children, Lelia and Benjamin," leaving the trust in Isaac Williamson as to the real estate only for the support of his family; so that at his death Isaac Williamson was the trustee of two different trust estates,—one in the personal property for the benefit of his children, Lelia and Benjamin, and the other in real estate, which he took upon a trust to receive the rent, income, and profits, and devote them to the support of his family. It was in the twenty-fourth clause, and with regard to the trust of the real estate, that it was provided that if, for any reason, he should become incapable of performing the trust, it should devolve upon the children, Lelia and Benjamin, and the property was given to them for that purpose, and no other. So, it will be seen that, as to the personal property, the court were still at liberty, in a proper case, to remove Isaac Williamson, and the testator made no provision for a substituted trustee. This is the clear effect of the will, and is the necessary result of the judgment of the orphans' court; and that court having, by the appointment of the plaintiff, adjudged that the trust continued, its determination, if it has jurisdiction, will not be questioned in this state. Smith v. Trust Co., 154 N. Y. 333, 48 N. E. 553.

But it is said by the defendants that the orphans' court is not a court of general jurisdiction, and that for that reason its determination is not entitled to full force and effect in the courts of this state. Whether it be a court of general jurisdiction or not is not very material in this case. The making of the decree substituting the plaintiff as trustee is alleged in the complaint, and it is also alleged that the orphans' court had jurisdiction to make that decree. In view of these allegations, it was competent for the plaintiff to prove what jurisdiction had been given to the orphans' court by the laws of New Jersey, and for that purpose, under these allegations, the laws of that state were competent evidence. Schluter v. Bank, 117 N. Y. 125, 22 N. E. 572. These laws were offered in evidence, and were properly received, and it appeared by those statutes which are in the record that the orphans' court had jurisdiction to remove an executor or trustee whenever he had wasted, misapplied, or embezzled the estate intrusted to him, and to appoint some suitable person in his place, so that the judgment of the orphans' court was clearly authorized by the statutes of New Jersey. The statute prescribes that the person so appointed shall have authority to demand and receive the assets of the estate, and to maintain all actions for its recovery or protection; and it has been determined by the supreme court of New Jersey that one who has been appointed trustee by the orphans' court under circumstances like those in this case may maintain an action against a person who has received money of the trust estate, although such money was received by such person before the appointment of the substituted trustee. Budd v. Hiler, 27 N. J. Law, 43. This determination, therefore, of the orphans' court, giving to the plaintiff powers which have been thus established by the decision of the supreme court of the state interpreting its own statutes, is binding upon this court. Suth. St. Const. § 191, and cases cited. The trustee thus appointed may, by virtue of that appointment, sue in the courts of this state. Toronto Gen. Trusts Co. v. Chicago, B. & Q. R. Co., 138 N. Y. 657, 34 N. E. 514.

It is said by the defendants that the trust is void. This being a trust of personal property, created by a resident of New Jersey, and in the state of New Jersey, it cannot be declared void by the courts of this state, as there is nothing to show that it is void under the statutes of New Jersey. Cross v. Trust Co., 131 N. Y. 330, 30 N. E. 125.

There is no doubt that the use by Williamson of the trust fund for the purposes of speculation was a violation of the trust, and the defendants, taking these securities with full notice that they were impressed with the trust, are bound to account for them. Marshall v. De Cordova (Sup.) 50 N. Y. Supp. 294; Suarez v. De Montigny, 1 App. Div. 494, 37 N. Y. Supp. 503; same case, affirmed, 153 N. Y. 678, 48 N. E. 1107. But it is said by the defendants that Williamson had the right to dispose of the principal and income of the trust fund. Undoubtedly, that is so. The eleventh clause of the will expressly gives to him the entire discretion as to the time;

amount, and character of his expenditures for this trust, and makes him the residuary legatee of the trust fund, absolutely in case of the death of the cestui que trust while he lives. But these expenditures are to be made for the benefit of the trust. The will does not authorize him to divert the fund from the purposes for which it was put in his hands as trustee, and to use it for speculative adventures, which could in no way be for the benefit of the trust, and which might and did practically result in its destruction so far as the trustee could bring it about. King v. Talbot, 40 N. Y. 76; Deobold v. Oppermann, 111 N. Y. 531, 19 N. E. 94. There is no principle upon which a person who is vested with the title to property as trustee for a particular purpose, although he has the right to dispose of the trust itself for that purpose, can be authorized to invest it in speculative adventures, and no case has been cited or has been found which authorizes such a disposition.

These considerations require us to affirm this judgment upon the defendants' appeal.

But the plaintiff insists that he is entitled to an accounting of each particular transaction made by the defendants upon the direction of Williamson, the trustee; that he may take the profits wherever it appears that a single transaction resulted in a profit, without any liability to share in the losses which may have accrued. Undoubtedly, as is said by Judge Woodruff in the case of King v. Talbot, 40 N. Y. 76, where there has been a misappropriation of trust funds, and several separate and distinct investments have been made, some of which have been profitable, and others unprofitable, the cestui que trust is at liberty to ratify such investments as have been profitable, and take the profits which have accrued from them, and to reject the unprofitable ones, and, as to them, insist that he shall receive the money which has been invested in them, with interest. This rule is well established, and is founded in good sense. Norris' Appeal, 71 Pa. St. 106; Oliver v. Piatt, 3 How. 333; Robinson v. Robinson, 11 Beav. 371. But the facts of this case do not bring it within that rule. Here there was no setting apart of a particular portion of the trust fund, and using it to make a particular investment which resulted in a profit, and the setting apart of another portion of the fund for an investment which resulted in a loss. Whatever may be the theory, there was, as a matter of fact, no "investment," in the true sense of the word, in any property whatever. The trustee might undoubtedly, at any time, have selected any particular alleged purchase of stock or grain, and required the title to that to be transferred to him; but, to enable him to do so, it was necessary that he should have paid the full purchase price of the particular property sought to be transferred; and, until he did pay it, the defendants were entitled to hold it in their own name, to protect their lien upon it for the unpaid portion of the purchase price. That this was done in the case of any investment does not appear. All that was done so far as appears from the evidence was that the trustee directed the purchase of certain stocks or of certain quantities of grain. To secure the defendants for any investment that

they might make in that regard, he delivered to them these securities, which they were at liberty undoubtedly to sell whenever it was necessary to repay them for money advanced. Upon the orders being made, the defendants undoubtedly went through the form of making a purchase, for the trustee's account, of the stock or grain which he directed them to buy; but, if that purchase was in fact completed, the title to the property was never transferred to Williamson, and no portion of the trust fund was ever invested in it. That was held all the time by the defendants, as a fund to which they might, if they saw fit, resort for the purpose of repaying them any losses which they were likely to suffer because of the dealings in which they were engaged for Williamson. These investments were not separate and distinct investments, as we have said; but the whole transaction was simply a series of purchases and sales, which, so far as the defendants were concerned, we must assume were actually made, and which, if they had resulted in a profit, would have operated to the benefit of the trustee, but which, so far as the trust estate was concerned, were mere shadowy transactions, not at any time affecting its amount or its nature or the income to which it was entitled, but only rendering it liable to be depleted at any time if the transaction should result in a loss or affording a possibility of an increase in the remote probability that the speculator should be able to make profits. The case is not within the rule laid down in the cases above cited, but it is more like a case where the trustee has engaged with the trust fund in an unauthorized business, in which case the rule is that the cestui que trust may ratify the transactions of the trustee, and take the profits, if there are profits; or he may, at his election, take back the fund and the interest thereon, or the dividends which have accrued from the securities which constituted the fund, but he cannot take both. If he elects to ratify the action of the trustee, he must take it, not only with the profits, but subject to the losses; but he cannot take the profits on one part of the transaction, and interest on the other, and avoid the losses. Baker v. Disbrow, 18 Hun, 29, affirmed 79 N. Y. 631, on the opinion of the general term.

The result is that that portion of the judgment appealed from by the plaintiff must also be affirmed. As neither party has succeeded in this court, the judgment is affirmed without costs. All concur.