VIOLET ROSALIE ANDERSON, an Infant, by WILLIAM V. ANDERSON, her Guardian ad Litem, and Others, Respondents, *v.* GEORGE H. DALEY and Others, Defendants, Impleaded with ELIZABETH C. JONES, as Executrix of GEORGE A. JONES, Deceased, Appellant.

*Trust fund — its use in the business of a corporation by its secretary with knowledge — credits of payments on the earlier items — personal liability of the secretary — when the beneficiaries may sue to enforce such liability — proof that the corpus of the fund was thus used.*

A secretary of a corporation who, with knowledge that the corporation is insolvent, and that moneys held by the vice-president and treasurer of the corporation as trustee are being used in the business thereof, actively participates in the use of the trust moneys, is chargeable as a trustee *de son tort* with liability for the loss sustained by the trust fund in consequence of such insolvency, notwithstanding the fact that there was no intent to defraud the trust estate, and that the secretary acted in the transaction as an officer of the corporation. The fact that, during the period subsequent to the time when the secretary acquired knowledge of such use of the trust moneys, the amount of trust funds withdrawn from the corporation exceeded the amount of trust funds

deposited with it during such period, does not relieve the secretary from liability for the balance due the trust estate at the time he acquired such knowledge where it appears that the trust funds had been used in the business of a firm, to whose property and business the corporation succeeded, and that the account of the trust estate with the firm and corporation constituted a continuous running account, and that the moneys withdrawn should hence be applied in discharge of the debts prior in point of time.

An action to enforce the liability of the secretary may be brought by the beneficiaries of the trust where it is alleged in the complaint that the plaintiffs, together with certain defendants, are the only parties in interest and that the trustee refuses to begin an action.

Evidence that the trustee had paid over to the *cestuis que trustent* the amount of the income of the estate is sufficient to authorize the court to find that the deficit was in the *corpus* of the estate and not in the income.

APPEAL by the defendant Elizabeth C. Jones, as executrix of George A. Jones, deceased, from an interlocutory judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Richmond on the 23d day of July, 1898, upon the decision of the court, rendered after a trial at the Richmond Special Term, adjudging that the defendant George H. Daley and the defendant Elizabeth C. Jones, as executrix of George A. Jones, deceased, are jointly and severally liable and indebted to the estate of Albert Ward and to George H. Daley, as trustee thereof, in the sum of $28,886.46, with interest thereon from January 14, 1897, and appointing a receiver to collect said moneys and hold the same subject to the order of the court.

*George J. Greenfield* [*Louis S. Phillips* with him on the brief], for the appellant.

*Walter S. Logan* [*Charles M. Demond* with him on the brief], for the respondents.

HATCH, J.:

The facts connected with the subject of this action are in brief these: For a long time prior to 1883, the firm of Devlin & Co. was in existence in the city of New York, and was engaged in business as dealers in clothing. The defendant George H. Daley was connected with such firm as a bookkeeper, and had been since 1862. In 1883 Daley was appointed trustee under the will of Albert Ward, he having been substituted, by decree of the court, in the place of

other trustees named in the will, who had declined to serve. Daley commenced the active execution of his duties as trustee in June, 1883, and he immediately began the deposit of moneys of the Ward estate with the copartnership of Devlin & Co. in the same month, and continued so to deposit and to draw moneys through Devlin & Co. so long as such firm was in existence; the course of business in this regard being for Daley to take the moneys which usually came to him by check, indorse the same to Devlin & Co., who deposited them in the bank account of the firm indiscriminately with other funds. An account was opened upon the books of Devlin & Co. crediting the Ward estate with the moneys received. These moneys were withdrawn from Devlin & Co. in various forms, by check, draft and the payment of tradesmen's bills incurred by the beneficiaries under the will of Ward. It does not appear in the record what the arrangement was which existed between the firm and Daley, as trustee, through which the moneys of the Ward estate went into the bank account of the firm, except that they were to pay interest upon daily balances. All that otherwise appears upon that subject is that such was the course of business. George A. Jones, deceased, was at this time connected with the firm of Devlin & Co., but whether as partner or otherwise, or what his interest therein was, does not appear. There is no proof in the case showing that he personally had any arrangement or understanding with Daley that the moneys of the Ward estate should be deposited with the firm, or that he was consulted in respect thereto or had any relation therewith, or that he occupied such a position in the firm as would have enabled him to have made any arrangement in connection therewith; and this is true of all the details in connection with the funds of the Ward estate from 1883, when the deposits began, down to February, 1891, when a change was made in the firm. In that year a corporation was organized, known as Devlin & Co., for the purpose of carrying on the same business that had been carried on by the firm prior thereto, the capital stock being $300,000, divided into 3,000 shares of $100 each. The stockholders consisted of eight members. Jeremiah Devlin held 1,835 shares; Thomas H. O'Connor, 340; Thomas D. O'Connor, 10; Daniel C. Devlin, 10; William C. Phelps, 4; Estate of William Devlin, 400; George H. Daley, 346, and George A. Jones, 5. There were five trustees of this corporation, and for the

first year they were Jeremiah Devlin, Eugene J. McEnroe, Henry
W. Penoyar, Joseph F. Webber and Merritt E. Haviland. The cor-
poration carried on business in the same manner as the firm had
done, and Jones' connection therewith consisted in his holding of
five shares of stock. It does appear, however, that Jones, after the
formation of the corporation, took a more or less active part in the
management and direction of its affairs, although he held no office.
The last election of trustees of this corporation was held at a stock-
holders' meeting on March 6, 1893, at which time Jeremiah Devlin,
George H. Daley, George A. Jones, William C. Phelps and Daniel
C. Devlin were elected trustees; and upon the organization of this
board Jeremiah Devlin was elected president; George H. Daley,
vice-president and treasurer, and George A. Jones, secretary. This
was the last election of officers of the corporation, and they con-
tinued to carry on its business until January 14, 1897, when, being
insolvent, it made a general assignment for the benefit of its cred-
itors, without preference. It is established by the testimony that as
early as January 31, 1895, George A. Jones was aware that the cor-
poration was then insolvent and unable to pay its debts. He was
also aware at that time that moneys of the Ward estate had been
used prior thereto for the benefit of said corporation in its business,
and he to a considerable extent had personally made use of such
moneys, in his capacity as secretary, for the relief of the corpora-
tion, with the knowledge and assent of Daley, the trustee.

On January 31, 1895, there was a balance on the books of said com-
pany to the credit of the Ward estate of $26,330.95. It does not
appear, however, in the testimony, nor has the court found, when the
money was deposited which went to make up the amount of this
indebtedness. For aught that appears it may have been, either in
whole or in part, made up of amounts deposited with the firm of
Devlin & Co.; for so far as this account is concerned, while there
was change from the firm to a corporation, in reality it was more a
change of name than of substance, as there was no break in the busi-
ness carried on, and but little in the method of its conduct. The
books which were introduced, either as regards items of the Ward
account or the general balance sheet, do not go back of January, 1895;
so that there is nothing in this record from which it may be deter-
mined whether this balance due on the Ward estate was an indebted-

ness of the firm or of the corporation or both. When the assignment was made the whole sum of moneys which had been deposited with the firm and with the corporation by Daley, as trustee, including the balance of January 31, 1895, was $75,639.75. Of this sum the trustee, as the court has found, between January 31, 1895, and January 14, 1897, the date of the assignment, withdrew the sum of $46,753.29, leaving due to the estate of Ward on the last-named date $28,886.46. During the same period there was deposited by Daley, as trustee, with the corporation $45,984.41, while the withdrawal, as we have seen, was $46,753.29; thus making the actual withdrawal during this period of time $768.88 more than was deposited with the corporation.

By this action the beneficiaries of the estate of Ward seek to charge the estate of George A. Jones with liability for the balance due the estate of Ward on the date when the corporation made its assignment, and the judgment which has been rendered so charges his estate therefor. The theory of the action and the averment of the complaint is that on the 20th day of March, 1895, Devlin & Co. was insolvent and unable to pay its debts; that for a month prior to said twentieth day of March Jones knew that Daley, as trustee, was in possession and control of a large amount of money of the Ward estate; and that Daley and Jones, desiring to continue the business of Devlin & Co., notwithstanding its insolvency, agreed between themselves that the said George H. Daley should pay over to said insolvent corporation funds which should come into his hands as trustee; that Daley and Jones should use such funds in carrying on the business of the corporation; that they should and would be individually liable and responsible for such moneys so to be loaned and used in the business, as copartners; that the said Daley and Jones would pay back the same to the estate of Ward, and that said estate should lose nothing by reason of the loaning and use of such moneys in the business of the corporation. The trial proceeded upon the theory of the complaint, and the court found said agreement in substance and effect as averred therein. The defendants offered no evidence on the trial, and the case is to be disposed of on the undisputed proof.

Several claims are advanced by the defendant Jones, who is the only appellant, why this judgment may not be supported; the first

of which is that the plaintiffs have no standing to maintain this action. It is the averment of the complaint that the plaintiffs have an interest in the estate of which Daley is the trustee, and that they, together with such persons as are made defendants, are the only persons in interest. It is further averred that the plaintiffs have requested the trustee to bring an action for the protection of the property of the estate; that he has refused so to do, and that for this reason the trustee is made a party defendant. In this respect the action is to be treated as though it were brought in the name of Daley as trustee, and as he would have standing to maintain the action, it necessarily follows that the plaintiffs, having an interest which he was called upon to protect, may avail themselves of all his rights. (*Harvey* v. *McDonnell,* 113 N. Y. 526; *Prentiss* v. *Bowden,* 145 id. 342.) The proof upon the trial tended to establish, and the court was authorized to find, that the acts of the trustee had resulted in creating a deficiency in the Ward estate for which he had not accounted; and as it appeared that he had paid over to his *cestuis que trustent* the amount of the income of the estate, it would authorize the court to find, and we may so assume in support of this judgment, that the deficit was in the *corpus* of the estate and not in the income. So that any technical question which might arise as to whether the funds which were converted were income or principal, is not available to the defendants. The action being necessarily treated as though brought by the trustee, the plaintiffs not only become entitled to enforce their rights as against particular property upon which they might assert a lien, but also have standing to recover as and for a conversion of the trust funds, whether represented by specific property or not, or whether the same be income or *corpus.*

We come, therefore, to a consideration of the main question in this case; and first, as to whether the evidence is sufficient upon which the court was authorized to find that Jones stood in relation to this estate in the position of a trustee *de son tort.* The evidence is clear that Jones was aware of the use of the trust funds of the Ward estate some time prior to January 31, 1895. It may be assumed that so far as the trust funds of the estate of Ward were used by the firm of Devlin & Co., or by the corporation which was thereafter formed, Jones would not have been personally

responsible therefor on account of the dealings therewith by the firm or the corporation prior to January 31, 1895; although the testimony discloses the fact that as early as 1893 Jones had knowledge of the use of these trust funds by the corporation, and had to some extent participated therein, either by the reception and indorsement of checks or by the payment of bills and drafts drawn upon the account with the firm. But the theory of the action and the finding of the court proceed solely upon the ground that Jones, having knowledge of the insolvency of the corporation from January, 1895, thereafter agreed to become responsible to the Ward estate for the moneys which might thereafter be used in its business. It is undisputed in the case that subsequent to this time Jones had actual knowledge of the use of these moneys, and his participation therein in connection with their use in the corporation was as active, or nearly so, as that of Daley.

It is a well-settled proposition of law — too well settled to now admit of dispute — that where a person dealing with a trustee in respect of trust funds, with knowledge on his part that the trustee is making unlawful disposition of the trust estate, receives such funds with such knowledge, he is chargeable as a trustee *de son tort,* and may be called upon to respond to the *cestui que trust,* either by way of restoration of specific property or, if that be not admissible, as and for a conversion of the trust funds. (*English* v. *McIntyre,* 29 App. Div. 439; *First Nat. Bank* v. *Nat. Broadway Bank,* 156 N. Y. 459; *Barnes* v. *Addy,* L. R. [9 Ch. App. Cas.] 244; *Blyth* v. *Fladgate,* L. R. [1 Ch. Div. (1891)] 337.) While it is true that fraud lies at the basis of fixing liability of this character, yet it is not essential that there should have been a corrupt intent, either to cheat the trustee or the *cestui que trust* out of the moneys thus received. In the eye of the law fraud may be predicated upon the act, even though there may have been an honest intent to restore the funds at some future time. The act of receiving is unlawful, and fraud may be predicated of such act. (1 Perry Trusts, §§ 169, 170.)

In the present case it is strenuously insisted that the evidence did not warrant the court in finding an agreement between the trustee and Jones to use the moneys as partners in the business, and to hold the estate of Ward harmless therefor. It is quite true that

the evidence does not establish that such an agreement was made in terms. It does, however, clearly establish that Jones was aware of the insolvent condition of the corporation, and he also had knowledge that moneys of the estate were being furnished by the trustee and used in the business of the corporation. He was an active participant in the use of such moneys. Consequently, whether we treat Jones as having made an affirmative agreement with Daley for the use of the funds or not, the evidence is clearly sufficient to charge him with knowledge and participation in their use for the business of the corporation, and, therefore, for his own benefit; and this is sufficient to charge him with liability whether an affirmative agreement existed or not. Nor can he shield himself by the fact that in what he did he acted as an officer of the corporation. The corporation could only act through its officers, and it is not essential that the misuse of the trust funds should be for the exclusive benefit of the person making such unlawful use, or indeed any benefit at all. Where he possesses the knowledge of the misuse of the trust funds, and knowingly applies them either for his own benefit or for the benefit of another, his liability is complete as the injury to the estate is the same whether he do it as an officer or as an individual. The basis of his liability is knowledge and injury, both of which here exist.

The cases relied upon to exonerate Jones from liability for his acts in this respect do not support the defendants' contention. In *Wilson* v. *Lord Bury* (L. R. [5 Q. B. Div.] 518) the directors of a company were held not liable for a failure by it to replace a mortgage which had been paid to the company, although the latter had agreed with the plaintiff that it should be replaced if paid off. This holding went upon the ground that the act was a mere breach of contract on the part of the company, and that as the directors had not actually participated therein, and were not shown to have knowledge of the transaction, they could not be held liable as trustees of the plaintiff; that liability could only attach to the principal in the transaction, and the mere relation to it as directors, with nothing else, was not sufficient upon which to predicate liability. In that case there was no offer to show that the defendants therein had any knowledge of the insolvency of the company at the time when the mortgage was paid off. Had knowledge of the insolvency of the

company and of the transaction been possessed by the directors, then within the rule which the court laid down liability would have attached. (P. 532.) In *Barney* v. *Barney* (L. R. [2 Ch. Div. (1891)] 265) the defendants simply acted as advisers of the trustee. They had no interest in the business, received none of the funds, had no control over them, except to a limited extent, and that for the purpose of their protection; and the court held that these facts excluded any finding of wrongful participation in the misuse of the funds of the estate. The test of responsibility as announced in that case was whether the money under the control of the defendants could be used by them to do with as they pleased. It is quite evident that this test is not based upon the idea of the rightful use of the moneys, but is predicated of the fact as to whether the party might so far obtain control of the funds as that he might make disposition of them. In the case now before us it appears that Jones received moneys and checks of the estate of Ward; that he drew checks on the fund and that he paid bills therefrom, and this for his own benefit, because benefit to the corporation is inseparable from the benefit to himself, he being financially interested therein. It is, therefore, apparent, in the sense of the test laid down by this authority, that Jones might at any time have taken the moneys which he received and appropriated them to his own use. In other words, he occupied a position where he might have so used them; and, therefore, was not within the rule of this case. These are the strongest cases in support of the defendants' theory, and it is evident that their doctrine cannot be extended to advantage Jones in exoneration of his acts.

The further claim is made by the defendants that Jones may not be made liable for the balance due the Ward estate on January 31, 1895. This claim proceeds upon the theory that more money was withdrawn by the trustee after that period than was paid in of the trust funds, and that Jones' undertaking was to hold the Ward estate harmless in respect of moneys which should be advanced after that time. This claim would have controlling force were it not for the fact that the property of Devlin & Co. had all been transferred to the corporation at the time it was organized, and the business thereafter carried on was the same business, for all the pur-

poses connected with the use of the trust funds, that had been theretofore carried on. When Jones became aware of the insolvency of the corporation and had knowledge of the use of the funds of the estate, he and all the other officers of the corporation used the money in and about the business. It must be assumed that the moneys which were withdrawn by the trustee after January 1895, were the product of the property of the corporation, which had been received by it from the firm of Devlin & Co.; consequently, the source from which the money was received required, under well-settled rules of equity, that the moneys should be used in discharge of the debts prior in point of time. If the moneys withdrawn could be applied in exoneration of the liability of Jones therefor, to the exclusion of the prior indebtedness, then it would necessarily follow, if the business were carried on for a sufficient length of time, that the Statute of Limitations would run against the earliest indebtedness. It must be assumed that the property was in part the product of the use of the funds of the Ward estate. The account in connection therewith was a continuous running account of deposits and withdrawals. Upon all principles of equity, the proceeds of the property were required to be used in discharge of the debt, and equity appropriates them to the earliest item.

In *Devaynes* v. *Noble* (1 Tud. Lead. Cas. 1) the estate of a deceased banker was sought to be charged with the payment of a particular deposit made prior to his decease. The account in the bank was a continuous running account, in which the plaintiff made deposits and withdrawals; and charging the withdrawals against the earliest items of the account, it showed no indebtedness existing at the time of the death of the decedent whose estate was sought to be charged; that the subsequent deposits, after the death, were to be held as constituting a new debt for which the members of the firm were liable; and they having become bankrupt, no equitable rule could be invoked which would enable the plaintiff to treat the withdrawals as being from the deposits with the firm after the decease. The doctrine of that case has found uniform application. (*Pattison* v. *Hull*, 9 Cow. 747; *The Antarctic*, 1 Sprague, 206; *Commissioners* v. *Springfield*, 36 Ohio St. 643; *Bussey* v. *Gant*, 10 Humph. 238; *Jones* v. *Benedict*, 83 N. Y. 79; *Webster* v. *Mitchell*, 22 Fed. Rep. 869; *Buster* v. *Holland*, 27 W. Va. 510.)

It follows from this rule that the court was correct in applying the withdrawal in reduction of the earliest items of the account and charging the defendants with the balance.

These views lead us to the conclusion that the judgment below was right, and it should, therefore, be affirmed.

All concurred.

Judgment affirmed, with costs.