STELLA WECHSLER et al., as Executors of SIGMUND WECHLSER, Deceased, Appellants, *v.* ABRAHAM M. BOWMAN et al., Formerly Copartners under the Firm Name of BYRNE & BOWMAN, et al., Respondents.

Argued January 21, 1941; decided April 24, 1941.

*Forrest M. Anderson, Donald Marks* and *Robert McCormack* for appellants.

*Louis Salant* and *Eli S. Wolbarst* for Abraham M. Bowman et al., respondents.

FINCH, J.   Ralph Wechsler, a brother of decedent, and the two plaintiffs in this action were named in the will of Sigmund Wechsler as his executors ·and trustees.

In 1928 Ralph Wechsler, acting for the executors, carried on negotiations through a broker, John Byrne, of the firm of Byrne & Bowman, seeking to sell to the Port of New York Authority a parcel of real estate which was one of the assets of the estate.   Bryne carried on his negotiations with another broker named Edward A. Arnold, who represented the Port of New York Authority.   There is a written agreement from the real estate department of the Port Authority to the Chief Executive Officer, dated February 17, 1928, to pay $818,700 for the purchase of this property. This memorandum reads: " Agreement has been reached for the purchase of property known as 700 West 179th Street * * * at a cost of $818,700 * * *."   The approval of the Advisory Committee was subjoined thereto: " In our opinion the Port of New York Authority is fully justified in paying $818,700 for the above described property."

Ralph Wechsler insisted that the commission which the estate was to pay must be paid back to him, and that Byrne & Bowman must collect their commission from the purchaser. We are not in the dark as to what then took place, as Byrne, in writing to his partner, Bowman, who was in Florida, calls this matter " a funny complication, which I think, however, I have overcome in a satisfactory way. * * * I succeeded in getting the buyer to pay the commission and this has to be split with Edward A. Arnold, who controled the purchaser. I considered the matter very carefully all week as to how to arrange the matter with Wechsler and finally agreed to send a bill to the Estate for the commission and then give back a check for the same amount to Applebaum in Wechsler's office. In this way we will have no income tax to pay on that part of the deal and do not think that we assume any liability whatever in putting the transaction through in that way." Thus, according to his own statement, Byrne induced the Port Authority to divert a part of the purchase price they had agreed to pay for the property, to Byrne & Bowman as brokers. It is significant to note that at the bottom of the typewritten agreement of the Port Authority to pay $818,700 as the purchase price for the property, there is written in hand the following notation: " Approved on basis of $810,000 to be paid owner and Port Authority paying in addition broker's commission of $8,700."

There was also, on February 23, 1928, a receipt signed by John Byrne on behalf of Byrne and Bowman, and an agreement running to the defendant Nathan Applebaum, as follows:

" Feby 23/28

" I John Byrne hereby agree to pay Nathan Applebaum for his services in assisting me in bringing about the sale of 700 W. 179th (cor. Bway) a full brokers Commission on the purchase price as soon as said Commission is paid to me or my firm by the sellers.

" JOHN BYRNE
for BYRNE & BOWMAN."

All the foregoing was arranged previous to the contract of sale being signed February 24, 1928, which provided for a purchase price to the estate of $810,000. Pursuant to the " arrangement with Wechsler," John Byrne carried out the collection of the commission from the estate as though it were a *bona fide* transaction. Byrne and Bowman submitted their bill to the estate and, upon receipt of a check therefrom, signed a receipt therefor. The $8,700 so received was returned to Ralph Wechsler in two checks, one of which was drawn to him directly and the other to Nathan Applebaum. As testified to without dispute by Arnold, the day after payment by these two checks was completed, Byrne explained to Arnold that the commission had to be returned to Ralph Wechsler in two checks because " Mr. Wechsler did not wish to have a deposit in his account to be of an amount which would identify it as having anything to do with the commission on the sale of this property."

Following the execution of this contract of sale, and on the next day, February 25th, Byrne wrote to his partner Bowman, who was in Florida, a letter as follows: " * * * I succeeded in closing the Southwest corner of Broadway & 179th Street, and ran into a funny complication, which I think, however, I have overcome in a satisfactory way. We sold the property at $810,000, all cash above the mortgage. While negotiations were on the way, Ralph Wechsler insisted upon getting a full commission for himself, and of course, the Estate could not pay two commissions, so they put it up to me to get the buyer to pay us full commission and to collect the other one through us from the Estate. I succeeded in getting the buyer to pay the commission and this has to be split with Edward A. Arnold, who controlled the purchaser. I considered the matter very carefully all week as to how to arrange the matter with Wechsler and finally agreed to send a bill to the Estate for the commission and then give back a check for the same amount to Applebaum in Wechsler's office. In this way we will have no income tax to pay on that part of the deal and do not think that we assume any liability

whatever in putting the transaction through in that way. There was no other way to put the deal through as Wechsler insisted on getting his full commission. The buyers understand the situation and agreed that we have done good work in getting the matter through the way we did.

" I wish you would let me know if you think the arrangement is alright, and if not, I may be able to do it in some other way, and will not take any action until I hear from you. The commission can be collected at any time that we desire to go after it."

Bowman telegraphed the following reply, dated February 27th: " Arrangement with Wecksler OK get receipt for services from them

" AMB "

Byrne also explained to Arnold that Applebaum was an attorney in Ralph Wechsler's office. Thereafter Byrne & Bowman, pursuant to the arrangements made before the contract of sale was signed with the estate, collected from the Port of New York Authority an additional $8,700 which was the remainder of the amount of the purchase price of $818,700 as approved by the Port Authority. At the trial the defendants, Byrne and Bowman, submitted as their defense that John Byrne was deceived by the false assurance of Ralph Wechsler that the estate owed him money as attorney, and that the " folks knew all about the transaction " of returning to him personally the commission paid by the estate. This defense is based solely on the testimony of John Byrne. In 1934, the other executors who are the plaintiffs in this action discovered for the first time, the acts of Ralph Wechsler and the firm of Byrne and Bowman in this transaction. Ralph Wechsler was thereupon removed as executor and trustee by the Surrogate's Court, and surcharged for an amount which included among other things this $8,700 paid to him individually. A creditor's action was then brought to set aside alleged fraudulent transfers by Ralph Wechsler to his wife. This suit was settled by the payment of $12,500 by Lillian

Wechsler, the wife of Ralph Wechsler, under a written agreement that no part of this sum was to be applied against the surcharge of $8,700 here involved. Since the date of this agreement, further surcharges for the payment of which the $12,500 was made applicable, have been imposed against Ralph Wechsler.

The plaintiffs seek to recover in this action the $8,700 received by Byrne and Bowman from the estate, and also the sum of $8,700 received from the Port of New York Authority.

The principle of law which the plaintiff urges has been reiterated by this court many times. Any one who knowingly participates with a fiduciary in a breach of trust is liable for the full amount of the damage caused thereby to the *cestuis que* trust. (*Jacobellis* v. *Prudential Ice & Coal Corp.*, 244 App. Div. 255; affd., 269 N. Y. 632; *Mack* v. *Latta*, 178 N. Y. 525, 532; *Anderson* v. *Daley*, 38 App. Div. 505; 159 N. Y. 146.) The explanation which John Byrne made to Arnold of the reason for the return of the commission to Wechsler not in one check but in two, and the testimony of John Byrne himself in the proceeding for the removal of Ralph Wechsler given prior to the trial of this action, wherein John Byrne testified that he was paying the money to Nathan Applebaum as broker, supplemented by the documents, including the letter mentioned above and the answer thereto by Bowman, raises an issue of whether there was not here proven a knowing participation with a fiduciary in a breach of trust.

It is not necessary, however, to rest this case upon that principle. There is no contradiction of the fact that Byrne and Bowman were unfaithful to their duties as brokers for the estate when John Byrne made an arrangement through Arnold with the Port of New York Authority to divert to them a part of the purchase price as a commission in addition to the commission to be collected by them from the estate. The law is well settled that it is the duty of an agent to act honestly towards his principal, and to use his utmost efforts to obtain for his principal the highest price

possible for the property. In consequence the principal is entitled to recover from his unfaithful agent any commission paid by the principal and all moneys paid by a purchaser whether as a bribe to the agent of the seller or otherwise, on the theory that the purchaser was willing to pay that much more than the stated purchase price. So it was held in *Andrews* v. *Ramsay & Co.* ([1903] 2 K. B. 635, 637), a leading English case, that the seller could recover from the broker both the commission paid by the seller and also a second secret commission paid by the purchaser. The court there said: " It is clear that the purchaser was willing to give £20 more than the price which the plaintiff received and it may well be that he would have given more than that." Indeed, in the case at bar we have seen that the agreement arrived at by the officials in the Port Authority was to pay as a purchase price the sum of $818,700. Thus we have an act which constituted Byrne and Bowman unfaithful agents. In *Lamdin* v. *Broadway Surface Adv. Corp.* (272 N. Y. 133, 138), with respect to the duty of an agent to his principal, the court said: " He is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties. Not only must the employee or agent account to his principal for secret profits but he also forfeits his right to compensation for services rendered by him if he proves disloyal.".

Byrne and Bowman, therefore, are *prima facie* liable to the estate as representing the beneficiaries for the commission paid them by the estate as brokers for the latter and also the amount received from the Port Authority, for the reason that they were unfaithful in accepting as a part of the purchase price of $818,700 so fixed by the purchaser, an amount equivalent to a second commission from the purchaser.

We are thus brought to a consideration of the defenses set up in the answer of the defendants. Their defense is *first*, a plea of the Statute of Limitations, since this action

was not commenced until eight years after the acts complained of occurred, although within two years from the time that knowledge thereof came to the plaintiffs, and *second*, a plea of payment, namely, that the payment of $12,500 in settlement of the creditors' action above referred to included the liability of Ralph Wechsler for this surcharge of $8,700.

Taking up first the plea of the Statute of Limitations, this is sufficient to prevent a recovery of the $8,700 received from the purchaser. This defense of the Statute of Limitations rests entirely upon the will of the Legislature in creating a limitation for the commencement of actions. An action upon a contract obligation, express or implied, must be commenced within six years after the cause of action has accrued. (Civ. Prac. Act, § 48, subd. 1.) While the period of limitation is the same, namely, six years, for an action on contract, express or implied, as for an action to procure a judgment on the ground of fraud, yet in the latter case the cause of action is not deemed to have accrued until the discovery by the plaintiff of the facts constituting the fraud. (Civ. Prac. Act, § 48, subd. 5.) Whether this period of six years shall run against an action to recover the money received by these unfaithful agents from the Port Authority depends upon whether the obligation may be said to be upon an implied contract obligation or to procure a judgment on the ground of fraud. A long line of cases in this court denominates the right to recover this $8,700 received from the purchaser as an action on contract and not an action on the ground of fraud. (*Carr* v. *Thompson*, 87 N. Y. 160; *Wood* v. *Young*, 141 N. Y. 211; *Brick* v. *Cohn-Hall-Marx Co.*, 276 N. Y. 259; *Cohen* v. *City Company of New York*, 283 N. Y. 112.) In *Carr* v. *Thompson* (87 N. Y. 160) we pointed out that in the Code of Civil Procedure the pertinent language of the section relating to an action to procure a judgment on the ground of fraud was " An action to procure a judgment other than for a sum of money on the ground of fraud " (p. 164). This action of the plaintiffs in seeking to recover the money paid to Byrne

and Bowman by the Port of New York Authority is an action to procure a judgment for a sum of money (Code Civ. Proc. § 382), based on a quasi-contractual obligation. There arises therefrom an implied obligation to pay the money to the plaintiff. The Statute of Limitations, therefore, is six years. (Civ. Prac. Act, § 48, subd. 1.)

When we come to the cause of action for the money paid by the estate to Byrne and Bowman, we have a transaction wherein these brokers received the money as a part of a plan in which they were not to keep the money but to pay it to Ralph Wechsler individually. Since Byrne and Bowman breached the duty which they owed to the estate as its agents to obtain the highest possible price for the property sold, they earned no compensation and the estate is entitled to recover by way of damages such amount as they have paid to these unfaithful agents even though as a part of this transaction none of the payment enriched these agents but went through them as a conduit to the executor personally. Under such circumstances, no implied contractual obligation arises since " the offender acquires no gain to himself * * * " and his estate is not enriched. (Lord MANSFIELD in *Hambly* v. *Trott*, Cowper, 371, 376.) The estate had the right to recover by way of damages the amount of the money which it had paid them because of the fraud perpetrated by the receipt by the brokers of the second commission paid by the purchaser. This was an action to procure a judgment, not for a sum of money but for damages for fraud growing out of the receipt of the second commission and hence the cause of action did not accrue until the plaintiffs were aware of the facts constituting the fraud. While the six-year Statute of Limitations, therefore, prevents a recovery for the moneys received from the Port of New York Authority, it does not prevent a recovery by the plaintiffs of damages for the amount which it had paid out to these defendants as unfaithful agents. Since these appellants did not discover the facts until 1934, or two years prior to the commencement of this action, the Statute of Limitations is not a bar.

We come then to the second defense alleged, namely, a plea of payment in that the surcharge against Ralph Wechsler was included within the sum paid by the wife of Ralph Wechsler in settlement of the creditors' action. The written agreements concerning this matter show that at the time the creditors' action was brought, there were pending claimed surcharges against Ralph Wechsler in the Surrogate's Court of New York County for amounts far in excess of that received in settlement of the suit. The creditors' action was brought to set aside conveyances and transfers of property alleged to exceed $1,000,000 in value. On the settlement, the written agreements each provided that the sum received therein was not to be applied or deemed to be applied to the surcharges then outstanding against Ralph Wechsler, including the $8,700 which is here involved. The defendants having alleged payment as an affirmative defense had the burden of proof thereon, and there is nothing in this record which shows that there was included in this settlement the surcharge against Ralph Wechsler of $8,700. Indeed, it may be said that the evidence clearly shows that the parties to the settlement agreement expressly intended that the sum should not be used in payment of this obligation.

It follows that the settlement of the creditors' action did not affect the liability of the defendants to the estate.

The appellants predicate liability in this action against the defendant Stewart Forshay upon the claim that he was a partner in the firm of Byrne and Bowman at the time that the secret commissions were accepted. This claim and the denial thereof raise a question of fact which must be deemed to have been decided adversely to the appellants by the trial court. (*Glanzer* v. *Shepard*, 233 N. Y. 236, 242.) There was also an issue of fact raised as to whether the defendant Nathan Applebaum *knowingly* aided Wechsler in the breach of trust. For the same reason and on the same authority, this question must also be deemed to have been decided adversely to the plaintiffs. It, therefore, follows that the complaint must be dismissed as to these defendants.

Where the judgment of the lower court is improper as a matter of law, this court has the power to reverse and grant final judgment. (*Russ* v. *Russ*, 263 N. Y. 625; Cohen on The Powers of the New York Court of Appeals, at pp. 437–439.)

It follows that the judgments should be reversed and judgment directed against the defendants Byrne and Bowman for the sum of $8,700, with costs in all courts.

LOUGHRAN, J. (dissenting). (1) As I understand the prevailing opinion, the court stops short of deciding that the Wechsler executors established as matter of law their contention that Byrne and Bowman had wrongfully participated with Ralph Wechsler in the breach of his trust as executor. Accordingly I do not take up that issue.

(2) The court postulates the out and out assertion " that the agreement arrived at by the officials in the Port Authority was to pay as a purchase price the sum of $818,700." I cannot agree to this construction of the evidence as matter of law.

The contract for the sale of the property by the Wechsler executors to the Port Authority was made on February 24, 1928. The purchase price stated therein was $810,000. The Port Authority did not commit itself to make the additional payment of $8,700 until March 30, 1928. This commitment was recorded as follows: " The Chief Executive Officer reported that in negotiating for the purchase of the property on the southwest corner of Broadway and 179th Street from the Estate of Sigmund Wechsler, the executor had insisted upon the purchaser paying as part of the purchase price the brokers' commission of $8,700.00 *in addition to the purchase price of $810,000;* that Byrne & Bowman, the brokers in the matter, had submitted a bill for services of $8,700 which amount was based upon the prevailing rates and which he considered reasonable under the circumstances. He, therefore, asked that his action be approved and that he be authorized to pay the bill rendered. Whereupon, the following resolution was adopted: Resolved, that the action of the Chief Executive Officer in agreeing

to pay the brokerage fee as part of the purchase price of the property on the southwest corner of Broadway and 179th Street from the Estate of Sigmund Wechsler, deceased, for the Hudson River Bridge Approach, be ratified and approved and that he be authorized *to pay such firm for its services in effecting such purchase price* the sum of $8,700." (The emphasis is mine.)

The foregoing resolution for the payment of $8,700 to Byrne and Bowman, as I read it, did not necessarily mean that the Port Authority would in any event have been willing to pay to the Wechsler estate $8,700 more than the purchase price of $810,000 that had been theretofore fixed by the contract of sale made by the Wechsler executors with the Port Authority on February 24, 1928.

The court makes much of a letter written by Byrne to Bowman one month before the adoption by the Port Authority of the foregoing resolution. The letter (which is quoted at length in the prevailing opinion) was at most an extra-judicial or unsolemn admission — an item of evidence — and was not in itself final or conclusive in any legal sense. (*Gangi* v. *Fradus*, 227 N. Y. 452; 4 Wigmore on Evidence [3d ed.], § 1059.)

In that state of the record, I am not prepared to say with Judge Finch that the courts below were wholly without reason for their finding of fact that Byrne and Bowman had not failed in their duty as brokers to obtain for the Wechsler estate the highest price which the Port Authority would have paid for the property.

(3) We are all agreed that the Statute of Limitations had barred recovery by the Wechsler executors of the $8,700 as money had and received by Byrne and Bowman for the use of the Wechsler estate.

The judgment should be affirmed, with costs.

Lehman, Ch. J., Lewis and Desmond, JJ., concur with Finch, J.; Loughran, J., dissents in opinion in which Rippey and Conway, JJ., concur.

Judgment accordingly.