■ Morris Talansky, Appellant, v Frederick Schulman, Respondent. [770 NYS2d 48]—

Order, Supreme Court, New York County (Richard Lowe, III, J.), entered October 8, 2002, which, to the extent appealed from, denied plaintiff's motion for a conditional order pursuant to CPLR 3126 striking defendant's answer and counterclaims and for a default judgment and granted defendant's cross motion for summary judgment dismissing the complaint, unanimously modified, on the law, the cross motion denied, the complaint reinstated and the matter remanded for further proceedings, and otherwise affirmed, without costs.

This action arises out of a business investment by plaintiff in a publicly traded company. According to the complaint, on July 30, 1998, plaintiff met defendant through a mutual friend, nonparty Ira Kanarick. At that time, defendant was an officer at RAS Securities Corp.[1] At that meeting, defendant advised plaintiff about an investment opportunity in The Forgotten Woman, Inc., a publicly traded company in the retail women's clothing business, which was seeking a $300,000 loan. Defendant told plaintiff the loan would be short term at little or no risk. He claimed to be personally familiar with the chairman of The Forgotten Woman, to know the company well, and that the loan would be safe, profitable and secured by stock whose value exceeded the loan amount. Defendant also stated he would save

1. RAS is now out of business.

plaintiff money by drafting the loan documents and waiving any commission for finding the investment.

Consequently, plaintiff loaned $300,000 to The Forgotten Woman. In exchange, The Forgotten Woman executed a promissory note, drafted by defendant, payable to plaintiff which matured on November 30, 1998. The note identified The Forgotten Woman as the sole borrower and designated RAS as the agent to hold certain securities as collateral in escrow. The Forgotten Woman subsequently defaulted on the loan and declared bankruptcy.

Plaintiff further alleges that he repeatedly contacted defendant about the default. Each time, plaintiff avers, defendant told him not to worry about the debt, that it was secured by the collateral, and that, in any event, defendant would make good on the debt. However, there was no security for the debt, and defendant does not deny that he knew all along that the securities to be escrowed were never delivered to RAS.

Plaintiff also alleges he and defendant then orally agreed that plaintiff would forbear from suing either defendant or The Forgotten Woman if defendant personally paid the debt. Thereafter, defendant paid plaintiff $35,000 and caused his company Hayward Lake Funding Service to transfer 150,000 shares of stock to plaintiff. Plaintiff contends defendant made these payments and stock transfers to pay part of the debt. Defendant maintains there was no oral agreement, and claims he paid these monies only because plaintiff sent "thugs" to intimidate and threaten him. Plaintiff also alleges that during their cordial relationship through September 2000, defendant repeatedly assured him he would personally pay the debt obligation.[2]

Based on these assertions, the complaint advances the following five causes of action: (1) gross negligence in the performance of legal and investment services rendered to plaintiff; (2) breach of fiduciary duty; (3) fraud; (4) breach of the duties of good faith and fair dealing; and (5) breach of an oral agreement to repay the loan. Defendant's amended answer denies any wrongdoing and alleges that he rendered only investment banking services solely on behalf of RAS Securities' client, The Forgotten Woman.[3] Defendant further alleges that neither he nor RAS Securities ever received any fees or commissions from plaintiff.

---

**2.** The record indicates that during 1998 and 1999 plaintiff and defendant engaged in two other unrelated loan transactions.

**3.** While not at issue on appeal, defendant also asserts three counterclaims for (1) assault and battery; (2) intentional infliction of emotional distress; and (3) money had and received.

Plaintiff moved to strike defendant's answer and counter-claims and for a default judgment based on defendant's alleged refusal to comply with his discovery requests. Defendant cross-moved for summary judgment dismissing the complaint on the ground that he never acted as plaintiff's attorney or investment advisor.

The motion court granted defendant summary judgment dismissing the entire complaint and granted plaintiff's motion solely to the extent of directing the parties to schedule a discovery conference on defendant's counterclaims.[4] In dismissing the complaint, the motion court found that plaintiff's first four claims to recover under theories of gross negligence, breach of fiduciary duty, fraud and breach of the duties of good faith and fair dealing were all based on the same threshold supposition that defendant, at all relevant times, had acted only as plaintiff's attorney and investment advisor. The motion court held such a relationship could not have existed between the parties because (1) an adversarial relationship existed between them; (2) plaintiff never paid defendant or RAS a fee or commission; and (3) nothing in the promissory note could be construed to create a fiduciary duty or agency relationship. The motion court also rejected the fraud claim on the separate ground that plaintiff, as a sophisticated businessman, could not have reasonably relied on the representations about The Forgotten Woman's financial condition without first reviewing corporate financial records. The motion court found that the statute of frauds barred plaintiff's claim for breach of an oral agreement.

We reverse. It is axiomatic that summary judgment is a drastic remedy that should not be granted where triable issues of fact are raised and cannot be resolved on conflicting affidavits (*see Millerton Agway Coop. v Briarcliff Farms*, 17 NY2d 57 [1966]; *Sillman v Twentieth Century-Fox Film Corp.*, 3 NY2d 395 [1957]). The key to summary judgment is " 'issue-finding, rather than issue-determination' " (*Sillman*, 3 NY2d at 404, quoting *Esteve v Abad*, 271 App Div 725, 727 [1947]; *accord Epstein v Scally*, 99 AD2d 713, 714 [1984]).

We find that the motion court improperly resolved, rather than identifying, issues of fact. In addition, we find, based on this record, plaintiff's first four claims are not predicated solely on defendant's role as attorney and investment advisor. Rather, the complaint itself bases these claims on defendant's alleged additional role as escrow agent and his representations to

---

4. The court also denied that branch of defendant's cross motion for summary judgment on the third counterclaim and severed the counterclaims.

plaintiff of his expertise in finance, loans and securities. Moreover, we find that plaintiff has raised triable issues of fact regarding the existence of an attorney or investment advisor relationship itself. We address plaintiff's claims seriatim.

## 1. Fiduciary Duty

An attorney-client relationship "arises only when one contacts an attorney in his capacity as such for the purpose of obtaining legal advice or services" (*Matter of Priest v Hennessy*, 51 NY2d 62, 68-69 [1980]). Formality is not essential to create a legal services contract. Therefore, "it is necessary to look to the words and actions of the parties to ascertain if an attorney-client relationship was formed" (*C.K. Indus. Corp. v C.M. Indus. Corp.*, 213 AD2d 846, 848 [1995] [citation omitted]). Plaintiff aptly contends that the words and deeds of defendant and himself imply that they formed such a relationship. Plaintiff alleges the following to support this contention: (a) defendant described himself to plaintiff as a lawyer and successful investment advisor; (b) defendant stated that he would save plaintiff money by preparing the loan documents and did in fact prepare those documents; (c) defendant stated he would waive any commission due to him for arranging the loan to The Forgotten Woman as a result of the parties' mutual friendship with Ira Kanarick; and (d) defendant agreed to prepare and file documents on behalf of plaintiff in Bankruptcy Court.

The motion court concluded that summary judgment was called for by the circumstances that (1) an adversarial relationship existed between defendant and plaintiff; (2) plaintiff paid no fee to defendant; and (3) Ira Kanarick, their mutual friend and a certified public accountant (CPA), was present at the meeting and therefore defendant could not have been acting as plaintiff's attorney or investment advisor. These conclusions bespeak issue determination, not issue finding.

In addition to his factual averments, plaintiff submitted an affidavit of nonparty Andrew Plevin, which states that plaintiff and defendant were on friendly terms after The Forgotten Woman had defaulted on the loan. Defendant's allegation, unsupported by any corroborating evidence, that any commission and fees were to be paid by The Forgotten Woman, in response to plaintiff's contention that defendant had waived plaintiff's obligation to pay those fees, only creates an issue of fact regarding defendant's role and whom defendant represented in the transaction.[5]

---

5. Plaintiff, in opposition to defendant's motion for summary judgment, alleges that defendant defaulted in his obligation to respond to demands for

Furthermore, the mere presence of Kanarick, a CPA, does not itself add significant weight to defendant's contention that he could not have been acting as plaintiff's attorney or investment advisor. Moreover, even assuming defendant were representing The Forgotten Woman, this does not preclude the possibility that defendant was also representing plaintiff, and, if defendant were indeed representing both sides, that he owed a fiduciary duty to both (*see Swift v Choe*, 242 AD2d 188 [1998]).

In sum, plaintiff raises numerous material issues of fact as to whether, by describing himself as a lawyer and successful investment advisor, defendant was offering his services, and whether he gratuitously prepared the loan document and waived the commission. Indeed, the totality of the evidence at least suggests that defendant was acting as plaintiff's attorney and investment advisor, because within one day defendant advised plaintiff to make an investment and execute a loan agreement without plaintiff consulting another investment advisor, as plaintiff typically did, or another lawyer, as is customary.

As stated above, an attorney/investment advisor relationship was not the sole basis for plaintiff's fiduciary duty claim. Alternatively, plaintiff raises material issues of fact regarding two additional bases for a fiduciary relationship—that defendant acted as escrow agent and that a fiduciary duty was created as a result of the business transaction. As to defendant's status as escrow agent, the promissory note expressly states that RAS, of which defendant was an officer, was to act as escrow agent for the collateral and that plaintiff had "the right to instruct RAS to liquidate" upon default.

It is settled law that an escrow agent owes his or her beneficiary a fiduciary duty (*see Bardach v Chain Bakers*, 265 App Div 24, 27 [1942], *affd* 290 NY 813 [1943]; *Director Door Corp. v Marchese & Sallah*, 127 AD2d 735, 737 [1987]). Here, as in *Director Door*, defendant was under a duty to disclose to plaintiff that the securities were never placed with RAS. Instead, he allegedly stated repeatedly that the collateral was in hand. Defendant does not meaningfully distinguish *Director Door*. Rather, he asserts that because RAS, not defendant personally, was the escrow agent, he cannot be liable for the breach. However, it is well settled that "[a]ny one who knowingly participates with a fiduciary in a breach of trust is liable for the full amount of the damage caused thereby" (*Wechsler v Bowman*, 285 NY 284, 291 [1941]; *accord Fallon v Wall St. Clearing Co.*, 182 AD2d 245,

---

documents, interrogatories and notices of deposition. Defendant's alleged obstruction of discovery may well have inhibited plaintiff from obtaining evidence of other similar and related transactions performed by defendant.

251 [1992]). This includes an officer of a corporation who knowingly participates in a breach of the corporation's fiduciary duties (*see Wechsler, supra,* 285 NY at 291; *Snyder v Puente De Brooklyn Realty Corp.,* 297 AD2d 432, 439 [2002], *lv denied* 99 NY2d 506 [2003]). As such, RAS clearly owed plaintiff a fiduciary duty, and plaintiff raises a triable issue of fact as to whether defendant directly participated in that breach and is therefore liable.

Finally, plaintiff also raises a triable issue as to whether defendant owed him a fiduciary duty as a result of their business transaction. Indeed, "[t]o claim that a business transaction gave rise to a fiduciary relationship, plaintiff must show that defendant had superior expertise or knowledge about some subject and misled plaintiff by false representations concerning that subject" (*Stuart Silver Assoc. v Baco Dev. Corp.,* 245 AD2d 96, 99 [1997]).

Here, the record indicates that although plaintiff had obtained a license from the National Association of Securities Dealers (NASD) in 1961, he had not been active in the industry for nearly 40 years. Rather, he was employed in not-for-profit fundraising. On balance, plaintiff raises a triable issue as to whether defendant possessed superior expertise and knowledge with respect to the business transaction which gave rise to a fiduciary duty.

## 2. Gross Negligence

As defendant's only argument for dismissal of plaintiff's gross negligence claims is based on the flawed premise that these claims against him are predicated solely on the fact that defendant is an attorney or investment advisor, the motion court erred in granting defendant summary judgment on this cause of action.

## 3. Fraud

To support his fraud claim, plaintiff alleges that defendant made the following misrepresentations: (1) that the investment was safe, and (2) that the loan would be secured by securities to be held in escrow with a value exceeding the debt.

The motion court found that plaintiff's reliance on these misrepresentations was unreasonable as a matter of law. Again, we find that the motion court erred in resolving issues of fact relating to this claim. In his affidavit in opposition to defendant's cross motion, plaintiff avers that: (1) he never used his NASD license after passing the test in the 1960s, and he never worked as a broker or investment professional; (2) he spent his career as a rabbi, a philosophy teacher and a fund raiser for nonprofit

groups and organizations; (3) in none of these positions did he obtain investment experience; and (4) he made almost all of his own prior investments with the assistance of an investment advisor. Moreover, the motion court never took into account defendant's false representation about the escrowed collateral. In any event, resolution of a reasonable reliance claim is generally left to a finder of fact (*see Country World v Imperial Frozen Foods Co.*, 186 AD2d 781 [1992]). Finally, we hold that plaintiff has sufficiently pleaded his fraud cause of action (*see* CPLR 3016 [b]).

## 4. Good Faith and Fair Dealing

Plaintiff asserts defendant breached the duty of good faith and fair dealing. Defendant's only responsive argument is that there existed no underlying agreement. In light of the triable issue plaintiff raises regarding an agreement for defendant to act as his attorney and investment advisor, the motion court should not have granted summary judgment on this claim.

## 5. Oral Guaranty

Plaintiff asserts that he and defendant made an oral agreement for defendant to cover The Forgotten Woman's debt in return for plaintiff's forbearance from prosecuting his claims against either The Forgotten Woman or defendant. While ordinarily such a promise would fail in face of the statute of frauds, that oral promise would be enforceable (1) if it were supported by new consideration; (2) if it were beneficial to the promisor; and (3) if the promisor had agreed to be directly liable for the debt (*see Martin Roofing v Goldstein*, 60 NY2d 262, 265 [1983], *cert denied* 466 US 905 [1984]). The motion court granted defendant summary judgment on this cause of action on the ground that there was no new consideration.

In his verified complaint, plaintiff avers that, as consideration, he offered to forbear from suing both The Forgotten Woman and defendant. Defendant's claim that this promise provided him with no benefit as he was not a shareholder or officer of The Forgotten Woman fails to acknowledge that plaintiff also promised not to sue defendant, a promise of plaintiff which raises an issue of fact about whether there existed new consideration.[6]

With respect to the motion to strike, the imposition of sanc-

---

**6.** The motion court's conclusion that plaintiff failed to allege any facts demonstrating forbearance apparently overlooks that part of plaintiff's verified complaint, which constitutes competent evidence on a summary judgment motion, which specifically alleges "plaintiff's forbearance from bringing an action against The Forgotten Woman and Schulman" in exchange for defendant's

tions pursuant to CPLR 3126 is within the sound discretion of the court, and, absent an abuse, a court's decision on sanctions will not be disturbed on appeal (*see Gross v Edmer Sanitary Supply Co.*, 201 AD2d 390 [1994]). In any event, as defendant is not entitled to have plaintiff's complaint summarily dismissed, the Supreme Court should take all reasonable steps to insure that the parties promptly engage in appropriate discovery.[7] Concur—Nardelli, J.P., Andrias, Saxe, Williams and Marlow, JJ.

---

assumption of The Forgotten Woman's debt (*see* CPLR 105 [u] [" 'verified pleading' may be utilized as an affidavit whenever the latter is required"]).

7. Finally, plaintiff's belated request for attorneys' fees in connection with his motion for CPLR 3126 sanctions is apparently raised for the first time on appeal and is, therefore, not properly before this Court (*see Green Point Sav. Bank v Oppenheim*, 217 AD2d 571 [1995]; *Matter of Angel Fabrics [Cravat Pierre]*, 51 AD2d 951 [1976], *lv denied* 39 NY2d 711 [1976]).