(July 27, 2006)

■ NM IQ LLC et al., Appellants, v OMNISKY CORPORATION et al., Respondents. [820 NYS2d 7]—

Judgment, Supreme Court, New York County (Karla Moskowitz, J.), entered May 28, 2004, dismissing the amended complaint for failure to state a claim, affirmed, without costs.

This is an action arising out of a merger in which plaintiff NM IQ LLC sold Nomad IQ, Inc. and Nomad IQ, LTD (the Nomad Businesses), which were involved in the development of wireless communications applications for Palm Pilots and other digital devices, to defendant OmniSky, which was in the business of providing Internet content on handheld devices such as Palm Pilots, for 3.5 million shares of OmniSky common stock. Plaintiffs, as pertinent to this appeal, assert causes of action seeking compensatory and punitive damages for fraud in the inducement and fraud, based upon defendants' allegedly false and misleading representations regarding the financial condition of OmniSky and its subscriber projections.

NM IQ LLC was created by the individual plaintiffs for the purpose of effecting the acquisition, and it received the OmniSky shares that were subject to lockup agreements lasting between 180 and 330 days; the individual plaintiffs own 94% of NM IQ LLC. When OmniSky's acquisition of the Nomad Businesses was announced on January 4, 2001, its stock was trading at $7.50 per share. By late 2001, the price had plummeted to 10 cents per share, and in December, OmniSky filed for bankruptcy.

The motion court properly dismissed the causes of action with respect to defendants' statements that OmniSky had sufficient capital to continue its operations and those of the Nomad Businesses through the end of 2001 and into 2002. Although plaintiffs sufficiently alleged that defendants knew such statements were false, plaintiffs had been provided with independent analyst reports warning that OmniSky would need capital as early as the third quarter of 2001 or no later than the end of that year (*see Matter of Dean Witter Managed Futures Ltd. Partnership Litig.*, 282 AD2d 271, 271 [2001] ["disclosures in the written offering materials rendered any reliance on alleged contradictory oral representations unjustifiable as a matter of law"]; *Societe Nationale d'Exploitation Industrielle des Tabacs et Allumettes v Salomon Bros. Intl.*, 249 AD2d 232 [1998], *lv denied* 95 NY2d 762 [2000]).

Moreover, this Court has held that a fraud cause of action is "fatally undermined" when the plaintiff learns of all the material facts, yet still decides to close on the deal (*Chelsea, LLC v Seventh Chelsea Assoc.*, 304 AD2d 498 [2003]). Since it is undisputed that plaintiffs learned about the decreased subscriber projections and thus had all the material facts before deciding to close on the transaction, their claim that there is a question of fact as to whether they could reasonably have believed that they *could not* refuse to close because this was merely an adverse business development, not fraud, is unavailing (*see Curran, Cooney, Penney v Young & Koomans*, 183 AD2d 742 [1992], *lv denied* 80 NY2d 757 [1992]). Finally, the motion court, while acknowledging defendants' statements that OmniSky had secured a commitment from Verizon to invest $20 million concerned an existing fact, correctly found in its disposition on the motion to dismiss the original complaint, that NM IQ LLC "did not reasonably rely on defendants' assertions in light of the pervasive warnings in the analysts' reports that OmniSky needed much more than a $20 million commitment to fund its operations through the end of 2001."

We have considered plaintiffs' remaining arguments and find them unpersuasive. Concur—Buckley, P.J., Mazzarelli, Andrias and Friedman, JJ.

Sweeny, J., dissents in a memorandum as follows: Plaintiffs' causes of action alleging fraud based on defendants' alleged misrepresentation about Verizon's commitment to invest in OmniSky should not have been dismissed. The IAS court's June 10, 2003 order was erroneous in not allowing the complaint to be amended to allow plaintiffs to assert these causes of action.

CPLR 3025 (b) provides: "A party may amend his pleading,

or supplement it by setting forth additional or subsequent transactions or occurrences, at any time by leave of court or by stipulation of all parties. Leave shall be freely given upon such terms as may be just including the granting of costs and continuances."

In determining whether to grant leave to amend pleadings, a two-step analysis is required. First, legally sufficient facts must be alleged by the proponent which establish a prima facie cause of action or proposed defense. Next, the court must test the pleading's merit. However, there is "a presumption of validity in favor of the moving party" and the "merit of a proposed amended pleading must be sustained . . . unless the alleged insufficiency or lack of merit is clear and free from doubt" (*Daniels v Empire-Orr, Inc.*, 151 AD2d 370, 371 [1989]). Our policy in this regard "has always been consistent with the rule that, in the absence of prejudice or unfair surprise, requests for leave to amend should be granted freely" (*id.* at 372).

To state a claim for fraud in the inducement, a plaintiff "must prove a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury" (*Lama Holding Co. v Smith Barney*, 88 NY2d 413, 421 [1996]). Likewise, a cause of action for common-law fraud is sufficiently stated where plaintiff "adequately alleged misrepresentation of or failure to disclose a material fact, falsity, scienter, justifiable reliance by plaintiff and injury" (*Bernstein v Kelso & Co.*, 231 AD2d 314, 321 [1997]).

In both the original and proposed amended complaint, plaintiffs alleged that during the negotiations with defendants, they were specifically told Verizon had committed to invest $20 million in OmniSky even though defendants knew that statement was false. In the proposed amended complaint, plaintiffs further alleged that they reasonably relied on this representation. The basis for this reliance, according to plaintiffs, was that the amount of Verizon's commitment indicated OmniSky's viability as a company. Plaintiffs also argue that Verizon's commitment would most certainly attract other investors to OmniSky. Indeed, the IAS court, in its decision on the motion to dismiss the original complaint found that the allegation concerning Verizon's commitment to OmniSky was an "existing fact," although five months later in its June 10, 2003 order addressed to the amended complaint, the court referred to it as a misrepresentation about the future.

Plaintiffs clearly made out a cause of action that the Verizon

commitment was a present statement of fact upon which they relied to their detriment. The fact that analyst reports stated OmniSky would need significant additional capital before the end of 2001 does not make plaintiffs' reliance on defendants' representations per se unreasonable. In fact, none of the analysts' reports or OmniSky's SEC filings specifically contradicted defendant McVeigh's statement that Verizon had committed to invest $20 million in OmniSky. We have repeatedly held that "resolution of a reasonable reliance claim is generally left to a finder of fact" (*Talansky v Schulman*, 2 AD3d 355, 361 [2003]; *see also Country World v Imperial Frozen Foods Co.*, 186 AD2d 781, 782 [1992]). Likewise, plaintiffs' claim that defendants knowingly misrepresented OmniSky's subscriber projections were statements of present fact, not future projections, and should not have been dismissed.

Plaintiffs were provided with analyst reports estimating that by the end of 2001, OmniSky's subscribers would total 226,000. Although OmniSky adopted these reports, by mid-November 2000 it had lowered the projections to approximately 160,000 but never advised plaintiffs of this. On December 30, 2000, plaintiffs specifically asked defendant Cleeman and OmniSky's then president, one Berkowitz, whether the high subscriber projections would be met, and both individuals assured plaintiffs that they would. Two weeks later, only days prior to closing, plaintiffs learned that the projections had been lowered to 160,000. Even at that point, however, plaintiffs were not aware that defendants had known for some time that the target projections would not be met and that defendants knew this at the time they were making affirmative assurances to plaintiffs to the contrary.

On a motion to dismiss pursuant to CPLR 3211 (a) (7), we must afford the pleadings a liberal construction, accept the allegations of the complaint as true and provide plaintiff "the benefit of every possible favorable inference" (*Leon v Martinez*, 84 NY2d 83, 87 [1994]). In addition, on this type of motion "any deficiencies in the complaint may be amplified by supplemental pleadings and other evidence" (*AG Capital Funding Partners, L.P. v State St. Bank & Trust Co.*, 5 NY3d 582, 591 [2005]). "Whether a plaintiff can ultimately establish its allegations is not part of the calculus in determining a motion to dismiss" (*EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 19 [2005]).

While it is true that a fraud cause of action is "fatally undermined" when a plaintiff learns of all the material facts yet still decides to close on a deal (*Chelsea, LLC v Seventh Chelsea Assoc.*, 304 AD2d 498 [2003]), plaintiffs alleged it was much

later when they learned defendants had known well in advance the projections would not be met yet continued to represent otherwise. Plaintiffs sufficiently alleged that defendants knowingly made false subscriber statements, and in their amended complaint alleged they relied on these projections because they were essential to OmniSky's revenues and continued financial viability. The fact that plaintiffs learned of the lower subscriber projections a few days prior to closing does not make that reliance unreasonable as a matter of law. By that point, plaintiffs had already signed certain documents putting this complex deal into motion. Whether plaintiffs reasonably believed they were still required to go ahead with the deal is a question of fact, and is "not subject to summary disposition" (*Brunetti v Musallam*, 11 AD3d 280, 281 [2004]).

I would therefore modify to the extent of reinstating plaintiffs' causes of action for fraud in the inducement and common-law fraud concerning defendants' representations about Verizon's commitment, and the claims as they relate to defendants' representations concerning subscriber projections, and otherwise affirm.